# Movl Construction Co. et al. v. Covington Trust & Banking Co.

(Decided Dec. 21, 1934.)

JOHN WM. HEUVER and GALVIN & TRACY for appellants.

ROUSE & PRICE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Louisville & Nashville Railroad Company contracted with the F. W. Graham Company to build two underpasses in the city of Covington. The terms of the contracts were substantially the same, and in each the contractor agreed not only to pay, but to indemnify, the railroad company against liability for all the demands, claims, liens, actions, etc., for or on account of any and all debts, claims, or demands against the contractor, or any subcontractor, for services, labor, material, supplies, equipment, etc., whether secured by mechanics', materialmen's or other liens or not, and executed bond for the faithful performance of the contract with the Seaboard Surety Company as surety. At the same time the contractor assigned all funds to become due for the purpose of saving the surety harmless. A portion of the work was let to, and performed by, the Movl Con-

struction Company, which executed a bond indemnifying the Seaboard Surety Company against loss on the bond which it had executed to the railroad company. After a portion of the work had been performed, the contractor borrowed $3,000 from the Covington Trust & Banking Company, for which it and F. W. Graham executed their promissory note. At the same time they, in consideration of $3,000 loaned for use in the construction of the underpass, executed a written assignment by which they sold, assigned, set over, and delivered to the Covington Trust & Banking Company "moneys due me and us from the L. & N. R. R. for the construction of the above jobs amounting to $3,000 plus interest at 6% from date hereof until paid," and reciting:

> "This assignment of funds is to secure the payment of a promissory note for the above amount dated on this date and due and payable on April 1, 1931."

In an action originally brought by the Globe Indemnity Company against the F. W. Graham Company, and to which the railroad was made a party defendant as garnishee, the railroad filed an answer and cross-petition admitting an indebtedness of $17,347.31 and making all claimants parties. The Movl Construction Company filed an answer and cross-petition asserting a lien for $10,434, and claimed priority. The Covington Trust & Banking Company set up its claim and assignment for $3,000, and asserted priority over all other claims. The Movl Construction Company filed a reply to the answer and cross-petition of the Covington Trust & Banking Company, setting up its contract and asserting that the claims amounted to more than was due by the railroad company. The Seaboard Surety Company filed its answer and cross-petition setting forth its bond, the assignment of the F. W. Graham Company, and the indemnifying bond of the Movl Company. The master commissioner, to whom the case was referred to hear proof and report on claims, gave to the materialmen and construction claimants a lien on the funds prior to the claim of the Covington Trust & Banking Company. On exceptions to the report, the court sustained the exception of the bank and adjudged it a prior lien. The balance, after paying all other claims,

was ordered paid to the Movl Construction Company, the indemnitor. The Movl Construction Company appeals.

The railroad company did not incur any obligation growing out of the assignment to the bank, but merely acknowledged its receipt. An assignee of sums due under a contract takes subject to its terms, conditions, and performance, and the assignor's liabilities and obligations thereunder. Mulliken v. Lieber, 13 Ky. Op. 939, 7 Ky. Law Rep. 602; Roe v. Scanlan, 98 Ky. 24, 32 S. W. 216, 17 Ky. Law Rep. 595; Botsford v. Lull, 30 Pa. Super, 292; Spicer v. Snyder, 66 Hun, 628, 21 N. Y. S. 157; Fulton National Bank v. Fulton County, 144 Ga. 691, 87 S. E. 1023. By the contract between the railroad company and the F. W. Graham Company, contractor and assignor, the latter agreed, not only to save the railroad company harmless, but actually to pay all claims or demands of every kind and description against the contractor or any subcontractor or any one dealing with them for services, labor, material, supplies, etc., performed and furnished in connection with the work. It was further agreed that so much of the money due or to become due the contractor under the contract might be retained by the railroad until all claims, demands, liens, suits, etc., should be settled. The amount of money in the hands of the railroad due under the contract, and thereafter paid into court for distribution, was not sufficient to pay all the lien claimants. In the circumstances, there was nothing due the contractor under the contract, and the bank acquired nothing by the assignment.

Having acquired no rights in the fund by virtue of the assignment, it is at once apparent that the bank's prior claim to the fund, if any, must rest on the theory of subrogation. That doctrine is a pure unmixed equity, having its foundation in principles of natural justice. In enforcing the right of subrogation, the purpose always is to make application of equitable principles to particular facts, and to effectuate the administration of natural justice between all parties concerned. Therefore, generally speaking, the right of subrogation arises where one has advanced money under an agreement, expressed or implied, with either debtor or creditor that he shall be subrogated to rights or remedies of

creditor, because one thus advancing funds is not a volunteer. Commonwealth v. Federal Land Bank, 226 Ky. 628, 11 S. W. (2d) 698.

As the fund paid into court is more than sufficient to pay the bank and the lien claimants other than the Movl Construction Company, only the rights of that company and the bank are involved. With respect to them, we have the following situation: The contractor having agreed to pay all construction claims, whether secured by lien or not, it and its surety, the Seaboard Surety Company, which guaranteed the performance of the contract, were directly liable for all such claims. Standard Oil Co. v. National Surety Co., 234 Ky. 764, 29 S. W. (2d) 29. The Movl Construction Company agreed to indemnify the Seaboard Surety Company against all loss by reason of the suretyship. As the ultimate liability was placed on the Movl Construction Company, the result of the arrangement was, in case the available funds were not sufficient to discharge all claims, to subordinate the claim of the Movl Construction Company to the other claims. By agreement with the contractor, the money was borrowed for use in the construction of the underpasses, and was actually used to pay laborers and materialmen. Had it not been loaned and used for that purpose, the Seaboard Surety Company would have had to supply the deficit to the laborers and materialmen, and the Movl Construction Company would have had to make good the loss. The result is that money furnished by the bank was used to discharge an indebtedness which in the end the Movl Construction Company would have had to pay. We are therefore disposed to the view that the case is one where a court of equity out of considerations of right and justice will imply an agreement that the bank be subrogated to the rights and remedies of the laborers and materialmen whose claims it paid, and that the chancellor did not err in so holding.

Judgment affirmed.

Whole court sitting.