# Federal Land Bank of Louisville v. Lightfoot et al.
## (Decided Nov. 26, 1935.)

464

MARTIN R. GLENN, R. A. BUCKLES, ROGER D. BRANIGIN and A. L. KOETHEN for appellant.

LEE GIBSON and S. H. MONARCH for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Mary E. Lightfoot, and her daughter, Jane Lightfoot, on July 26, 1923, conveyed to Herbert Beard two tracts of land situated in Breckinridge county, Ky.; one of 113, and the other, 397, acres, the latter comprising the Walker tract of 249 and the graveyard tract of 53 acres, for the agreed consideration of $10,000, evidenced by Beard's and his wife's notes payable to Mary E. Lightfoot.

The deed contained a clause controlling the right of Beard to cut, remove, and market the timber therefrom and the application of the proceeds to the payment of the notes. The notes were placed for safekeeping by the Lightfoots with the Bank of Cloverport, of which Beard was an officer.

In 1926, Beard made an application to the Federal Land Bank of Louisville, Ky., for a loan of $8,000 which he proposed to secure by a mortgage on the above land. In his application, he stated to the Federal Land Bank he desired the loan "to pay for farm, $8,000.00." The loan was first refused him by the Federal Land Bank. Later, it loaned him $3,000, a portion of which was applied to the payment of stock which he was required to take in the bank, and the balance, $2,840, was paid to him by a draft which he deposited to his credit in the Hardinsburg Bank & Trust Company and immediately drew his check thereon in the amount of $2,769, payable to Mrs. Lightfoot, which she caused to be credited to her account in the Bank of Cloverport. Beard was a brother-in-law of Mrs. Lightfoot, and, of course, the uncle-in-law of Jane Lightfoot. The relations between him and them were extremely cordial and they reposed in him unlimited confidence and trust.

In the briefs of the parties, the parties engage in an intensive discussion of a transfer of the Beard notes to the bank; and entry on the records of the county court clerk, showing their transfer; the authenticity of

the signatures of the Lightfoots to the transfer appearing on the margin of Beard's deed to the land and of a second mortgage on the land to secure Mrs. Lightfoot in the payment of notes purporting to have been given by Beard to her after he had borrowed the $3,000 of the Federal Land Bank, which he had secured with a first mortgage on the land.

It is entirely unnecessary to dispose of, correctly, this case to review the record relative to, or to consider and discuss, these debated topics. Nor is it necessary to determine the rights of the parties thereunder. We shall, however, regard the Federal Land Bank's mortgage invalid as between it and Mrs. Lightfoot's purchase-money lien.

Without reproducing the evidence, it satisfactorily establishes that the Beard's check to Mrs. Lightfoot, dated July 19, 1926, payable to Mrs. Lightfoot, drawn upon the Hardinsburg Bank & Trust Company for $2,769, was actually paid out of, and with, the proceeds of the Federal Land Bank's draft to him for $2,840 and not out of the proceeds of the timber cut and removed by him from the land as Mrs. Lightfoot "thought."

This established fact, the Federal Land Bank contends, entitles it, according to the principles of the doctrine of subrogation to a first lien on the land to pay the balance of its $3,000 note, as against the balance of Mrs. Lightfoot's lien to secure the balance of her purchase-money notes. The circuit court decreed that the Federal Land Bank was entitled to a lien on the land under the doctrine of subrogation to secure the payment of the $2,769, but that her lien to secure the payment of the balance of her purchase-money notes was of equal dignity with that of the Federal Land Bank.

The Federal Land Bank's mortgage on the 113 acres was not challenged by the Lightfoots. It has been enforced by a decree of the court, the 113 acres sold, and the proceeds credited on the Federal Land Bank's debt of $3,000 and interest, leaving due the balance. It is here urging that so much of the court's decree as allowed Mrs. Lightfoot to participate equally with it in the proceeds of the 397-acre tract, is erroneous and prejudicial. In this contention, we concur.

The principles of subrogation are broad and liberal enough to entitle the Federal Land Bank, as against

the balance of Mrs. Lightfoot's purchase-money notes, to have the balance of its note first paid out of the proceeds of the 397 acres. For a statement of the applicable doctrine of subrogation which so entitles it to be so paid the balance of its debt, see 25 R. C. L. 1312; Annotation Newcomer v. Simon, 43 A. L. R. 1394; Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834; McCracken County v. Lakeview Country Club, 254 Ky. 515, 70 S. W. (2d) 938; Commonwealth v. Federal Land Bank of Louisville, 226 Ky. 628, 11 S. W. (2d) 698; Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566; Louisville Joint Stock Land Bank v. Bank of Pembroke, 225 Ky. 375, 9 S. W. (2d) 113; Federal Land Bank of Louisville v. Marvin, 228 Ky. 242, 14 S. W. (2d) 762, 70 A. L. R. 1392; Connor v. Home & Savings Fund Co. Bldg. Ass'n, 80 S. W. 797, 26 Ky. Law Rep. 109; State National Bank v. Vicroy, 70 S. W. 183, 24 Ky. Law Rep. 892, 894; Maryland Casualty Co. v. Walker, 257 Ky. 397, 78 S. W. (2d) 34; Vance v. Atherton, 252 Ky. 591, 67 S. W. (2d) 968; Movl Construction Co. v. Covington Trust & Banking Co., 258 Ky. 485, 80 S. W. (2d) 560.

It is unnecessary to repeat herein the principles of the doctrine of subrogation set forth in those cases. They plainly and indubitably entitle the Federal Land Bank to a first lien on the 397 acres to secure the payment of the balance of its debt as against Mrs. Lightfoot's and the trial court erred in not so decreeing.

Wherefore, the judgment is reversed for proceedings consistent herewith.