## Rollins v. Board of Drainage Com'rs of McCracken County for Mayfield Drainage Dist. No. 1 et al.

Dec. 15, 1939.

M. C. Anderson for appellant.

C. A. Wickliffe and W. Milke Oliver for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing in part and affirming in part.

In this opinion the appellant, L. B. Rollins, plaintiff

below, will be referred to as the plaintiff. Appellee, the Board of Drainage Commissioners of McCracken County for the Mayfield Creek Drainage District No. 1, one of the defendants below, will be referred to as the Commission; and the appellees, Fred Morgan, Henry Kister and W. Mike Oliver, who filed an intervening petition, will be referred to as the Intrevenors. This case was submitted to the chancellor on rather a long and complicated stipulation of facts involving many figures, and we shall attempt to state the facts and figures without going into detail and without attempting to show how the figures were arrived at.

The plaintiff is the owner of a farm containing 474 acres situated in this drainage district, upon which at the time this action was instituted there was a balance of $14,928.67 due on the minimum district assessment. Section 2380b-45a, Kentucky Statutes, reads as follows:

"The board of drainage commissioners shall be empowered to receive from any land owner at any time payment in full for the unpaid portion of the minimum district assessment against his tract, provided that satisfactory arrangements can be made with the bond owners to retire prematurely such portions of the bonds as will practically cover the amount of lump payment of the minimum district assessment, and provided that such transactions will cause no present or future shortage of funds for payment of coupons and the retiring of maturing bonds."

The plaintiff tendered the Commission $10,000 of its bonds, to which were attached interest coupons in the sum of $7,726, in full payment of this assessment against his land. The Commission refused to accept these bonds because a judgment entered in the McCracken Circuit Court on August 28, 1933, in the action of Fred C. Morgan v. Board of Drainage Commissioners of McCracken County et al., directed the Commission not to pay any bonds issued by it until $35,644.65 (representing certain sums with interest to January 1, 1938, which had been diverted from the construction fund to the bond and interest fund) had been paid to Morgan, who was the contractor who constructed the drainage system. Thereupon the plaintiff filed this action seeking to have the judgment of August 28, 1933, vacated as void in so far as it affects his rights to pay the balance of the mini-

mum district assessment against his land by surrendering to the Commission its bonds. Plaintiff further sought a mandatory injunction to require the Commission to accept the bonds tendered in full payment of his minimum district assessment.

W. Mike Oliver and Henry Kister had acquired a one-half interest in the fund of $35,644.65 due Morgan which had been diverted from the construction fund to the bond and interest fund, and Morgan, Oliver and Kister filed their intervening petition in this action, which they asked to be taken as their answer, and as amended this pleading asked the court to require a cash payment of .087527 per cent of the unpaid benefit tax assessment of $407,239.37 in satisfaction of their $35,644.65 claim before any land owner might satisfy his unpaid minimum district assessment by the surrender of bonds. The Intervenors further pleaded an unsecured debt, which with interest amounted to $16,935.25, and they sought to subject so much of the 7½ per cent administrative expense assessment as was not necessary for expense purposes to apply as a credit on their unsecured claim. The intervening petition then denied the allegation of plaintiff's petition. The Commission in its answer merely sought the advice of the court as to whether it should accept the bonds tendered it by the plaintiff in full satisfaction of the minimum district assessment against his land. By agreement of parties all affirmative matter in the various pleadings which was not denied was controverted of record.

It was agreed that the total amount of the unpaid assessment was $395,200.25 (the Intervenors erroneously stated this figure as $407,239.37 in their petition), and the chancellor adjudged that before any land owner could satisfy his minimum district assessment by surrendering bonds of the Commission he would have to pay in cash .090205 per cent of this total unpaid assessment (which would produce $35,644.65), thereby restoring the sum the Commission had diverted from the construction fund to the bond and interest fund. The chancellor further adjudged the Intervenors are entitled to have applied on their indebtedness the surplus of the 7½ per cent unpaid administrative tax after all necessary and lawful administrative expenses had first been paid.

The plaintiff appeals from this judgment and asks that it be reversed because: (1) It is inequitable to force him and all other land owners who desire to satisfy their unpaid minimum district assessments by surrendering bonds to make good the whole of the diverted fund when bond holders whose bonds have been paid and land owners who have satisfied their assessments by the surrender of bonds obtained their proportionate part of the diverted fund; (2) that the judgment entered August 28, 1933, should be vacated as void as to the plaintiff because he was not a party in that proceeding; (3) the court erred in ordering plaintiff to prosecute this action in behalf of all persons holding unsatisfied bonds, and, in behalf of all land owners owing drainage taxes; (4) the requirement of a cash percentage payment conflicts with Section 2380b-45a, Kentucky Statutes, which provides that the minimum district assessment may be paid in full by surrendering these bonds.

The Intervenors on their cross-appeal take the position that if the 7½ per cent assessment may be satisfied by the surrender of bonds, then there will be no revenue with which the Commission may continue to operate, since the bonds now are worth only 10 or 12 cents on a dollar.

It being admitted the Commission erroneously, but innocently, diverted money from the construction fund and applied it to the bond and interest fund where it was used to retire bonds and interest coupons, we cannot see how there can be any defense made to restoring this money to the construction fund. But this restitution must be accomplished in such a manner that no injustice be done to the owners of the bonds now outstanding, or to the land owners who desire to satisfy their minimum district assessment by surrendering such bonds. Subrogation is often referred to as the doctrine of substitution, and it is an invention of equity to compel the one who owes a debt to ultimately pay it. 25 R. C. L. 1311, Section 1. In enforcing the doctrine of subrogation due regard must be given to the rights of others and it will not be invoked where an injustice will be wrought. 60 C. J. 707, Section 19; Movl Construction Co. v. Covington Trust & Banking Co., 258 Ky. 485, 80 S. W. (2d) 560; Federal Land Bank v. Lightfoot, 261 Ky. 463, 88 S. W. (2d) 21, and the many authorities

cited therein. In the instant case the Commission took money which had been allotted to Morgan, to which the bond holders had not the slightest claim, and applied it in satisfaction of the bonds and attached interest coupons. Every bond holder received his pro rata part of this diverted fund, and now all that is sought is to have the present bond holders reimburse the construction fund with just what they received from it through the erroneous act of the Commission. It is for such cases as this that equity invented the doctrine of subrogation.

But it would be inequitable to require the land owners whose assessments remain unpaid, and who desire to satisfy same by surrendering bonds, to pay in cash such a percentage of their unpaid assessments of $395,200.25 as will reimburse the construction fund in the sum of $35,644.65, when all the bond holders and all the land owners, whose assessments total $1,041,479.29, got their proportionate share or benefit from the diverted fund in having it applied on their bonds and interest, or if land owners, they received the benefit by applying the bonds in payment of their assessments. Equity requires that all bond holders and all land owners who benefited from this diverted fund return the proportion they received to the rightful owner, but many of them have received full payment of their bonds and many land owners have used these bonds in satisfaction of their assessments and now many of them are scattered to the four winds and it is practically impossible to locate them and force restitution. So equity says to the remaining land owners who want to pay their assessments by surrendering these bonds: "You first restore that part of the diverted fund from which you received the benefit." The question arises, How may that be done? The entire bond issue and coupons attached were to be paid out of a total assessment of $1,041,479.29 and the chancellor should have required the payment in cash of such a percentage of that $1,041,479.29, as will produce $35,644.65, instead of producing this sum by taking .090205 per cent of $395,-200.25, which caused the land owners with unpaid assessments who wished to satisfy same by surrender of bonds to make good the entire diverted fund. The chancellor should have required .034225 per cent of $1,041,479.29 paid in cash (which will produce $35,644.65), as a condition precedent to the land owners satisfying their unpaid minimum district assessments by the surrender of

bonds. This cash payment will be made to the Commission, which will make proper disposition of same. This will not fully restore to the construction fund the entire diverted sum, but equity cannot do more than require the present holders of bonds to refund that portion of the diverted fund they received.

The plaintiff cites People v. Scanlan, 265 Ill. 609, 107 N. E. 149; Turner v. Hunt Drainage Dist., 7 Cir., 87 F. (2d) 167; Kochtitzky v. Mercantile Trust Co., 8 Cir., 16 F. (2d) 227; Canal Const. Co. v. Federal Life Ins. Co., 8 Cir., 21 F. (2d) 928; State ex. rel. Bliss v. Grand River Drainage Dist. of Livingston and Linn Counties, 330 Mo. 360, 49 S. W. (2d) 121, as being in conflict with the views herein expressed. But an examination of these cases will show that none of them have any application to the instant case. The Scanlan and Turner cases hold that when lands have once been assessed for an improvement they cannot be re-assessed for the same improvement. The Kochtitzky case is controlled by an Arkansas statute entirely different from Kentucky Statutes Section 2380b-45a. The Canal Construction Co. case holds a contractor is estopped from impairing a superior lien, while the Bliss case holds there cannot be equal apportionment of funds where the power to levy and collect taxes has not been exhausted.

The plaintiff collaterally attacks the judgment rendered August 28, 1933, in Morgan v. Board of Drainage Commissioners et al., contending it is void as to him because he was not a party to that action. Where a judgment is collaterally attacked, the court will merely determine whether the court wherein it was rendered had jurisdiction of the parties and of the subject matter of the action. Lowe v. Taylor, 235 Ky. 21, 29 S. W. (2d) 598. The plaintiff does not question the court's jurisdiction of the subject matter, or that his predecessor in title was not before the court as provided by Section 2380b-8, Kentucky Statutes. And Section 2380b-52 provides that all persons who acquire title after the original petition is filed to establish the drainage district shall be bound by all proceedings under the drainage act. The attacked judgment directed the Commission to follow a certain procedure in repaying the diverted fund and the fact that this might have indirectly affected Rollins did not make him a necessary party to that action.

The stipulation upon which this action was submitted to the chancellor contains a paragraph to the effect that the questions of law and of fact involved in this litigation are common to all of the 200 land owners in this drainage district and to all of the owners of the $245,000 bonds outstanding; that these bond owners are numerous, are scattered and some of them are not known and that it would be impractical to bring all of the land owners and bond holders before the court. In the face of such a stipulation, there is no merit in plaintiff's contention that the court erred in ordering him to represent in this action all the land owners and bond holders; Section 25, Civil Code of Practice; Russell v. Kentucky Utilities Co., 231 Ky. 820, 22 S. W. (2d) 289, 66 A. L. R. 1238.

The argument that to require restitution of this diverted fund contravenes Section 2380b-45a is answered by stating that this diversion took place more than two years before the Legislature enacted this section of the statutes.

The contention of the Intervenors on their cross-appeal that if the plaintiff is allowed to pay the 7½ per cent assessment in bonds there will be no revenue with which the Commission may operate, is easily and quickly answered. Section 2380b-22, Kentucky Statutes, expressly provides this expense, or administrative, assessment shall be included in what that section designates as the minimum district assessment, and Section 2380b-45a provides the minimum district assessment may be satisfied by the surrender of bonds.

The judgment is reversed on the appeal with directions to the chancellor to require .034225 per cent of the minimum district assessment to be paid in cash before the remainder of same may be satisfied by the surrender of bonds, with coupons attached, in a sum sufficient to satisfy the minimum district assessment with any interest and penalties which might have accrued. On the cross-appeal the judgment is affirmed.

Whole Court sitting.