## Gilliam et al. v. Cassady et al.

April 28, 1942.

Steele & Vanover for appellants.

Andrew E. Auxier and Henry J. Scott for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Several years prior to 1926, J. W. Cassady, who died in September, 1936, and a son-in-law of his, C. E. Gilliam, jointly purchased a piece of property in Pikeville. They made the first payment jointly and assumed the payment of two $525 notes which were secured by a lien on the property. In February, 1926, Cassady borrowed $1,000 from his wife Victoria, the plaintiff below and one of the appellees here, and gave her a note for that amount and a mortgage on his one-half interest in the property to secure its payment. Cassady and his wife were not living together at the time he borrowed the money and they were divorced at the time of his death. He made two payments on the $1,000 note, the last in 1929. In July, 1936, he deeded his one-half undivided interest in the property to his daughter, Maude Gilliam,

wife of C. E., as her part of his estate. Following Cassady's death, Mrs. Cassady tried to get Mrs. Gilliam to agree not to claim any part of her estate, and upon being advised that Maude refused to so agree, she said she would have to assert her rights under the mortgage.

This action was instituted in 1938 by Victoria Cassady to accomplish that end. Maude Gilliam and her husband filed a joint and separate answer and counterclaim and cross petition against Myrtle Cassady, Lizzie Cassady Thompson, Ben Cassady and Clara Cassady, administratrix of the estate of Mack Cassady, deceased. Mrs. Gilliam asserted that her father had warranted the title of the property conveyed to her and that the parties, other than Victoria Cassady, referred to in the cross petition, had received property from their father, J. W. Cassady, in excess of the value of the interest conveyed to her, and asked, in the event the mortgage be adjudged prior to her claim, that she be equalized with the other heirs. Upon the motion of Ben Cassady and Clara Cassady, administratrix of the estate of Mack Cassady, the cross petition was stricken from the record over the objection of the Gilliams. C. E. Gilliam asserted that there was a vendor's lien retained when he and J. W. Cassady purchased the property which was of record, and the deed made to them was made a part of the description in Cassady's mortgage, and therefore he was entitled to be subrogated since he had paid his half of the lien, as well as that of J. W. Cassady.

Further pleadings were filed by both parties. After the issues were joined, proof was taken and the trial resulted in favor of Victoria Cassady, thereby disallowing the claim of C. E. Gilliam that he was entitled to a prior claim and interest in J. W. Cassady's interest in the property by reason of payment of the deferred purchase money. The judgment provided that, if any surplus remained after the paying of Victoria Cassady's claim, such surplus should be paid to Maude Gilliam.

The Gilliams are urging reversal upon the grounds that (1) since it is the policy of the law to avoid multiplicity of actions, the court should have given all of the relief to all the parties in one suit, and therefore should not have stricken their cross petition, especially, since Myrtle Cassady and Lizzie Cassady Thompson made no defense; and (2) the purchase of the property was a business venture in the nature of a partnership between

J. W. Cassady and C. E. Gilliam, and the latter was entitled to the settlement of the partnership before Victoria Cassady could assert her mortgage.

It is the policy of the law to avoid a multiplicity of actions, but it is provided in Subsection 3 of Section 96 of the Civil Code of Practice that a cross petition is not allowed to a defendant except upon a cause of action which affects or is affected by the original cause of action. State Bank of Stearns v. Stephens, 265 Ky. 615, 97 S. W. (2d) 553. The part of the cross petition stricken by the trial court was in no way connected with or affected by Victoria Cassady's cause of action against the Gilliams. If Maude Gilliam feels that she is aggrieved, she should raise that question in an appropriate action against the other parties. In the light of the view just expressed we fail to see how the rights of the appellants were prejudiced by the striking of the part of the cross petition here under consideration on motion of only two of the parties against whom it is directed. Those parties constituted a class, and if it was properly stricken as to one, it was properly stricken as to all.

The remaining question addresses itself to the propriety of the final judgment. It is insisted in the brief for appellants that Victoria Cassady knew of the arrangement under which J. W. Cassady and C. E. Gilliam purchased the property, and that the latter, therefore, was entitled to a prior lien and a settlement of the accounts between the partners before she was entitled to enforce her mortgage. It is further insisted that, in the event Victoria Cassady was not sufficiently aware of the partnership nature of the ownership of the property, she had actual and constructive knowledge that there was a vendor's lien amounting to two notes of $525 each against the property, and that the lien was superior to her mortgage. There was no allegation as to any partnership arrangement under which J. W. Cassady and C. E. Gilliam purchased the property. The record shows that it was purchased jointly, but there was nothing to show that it was a partnership venture. There is no basis, therefore, for the contention that Gilliam was entitled to a prior lien against J. W. Cassady's interest in the property pending a settlement of the alleged partnership accounts.

Gilliam introduced proof to the effect that a cancelled check for $526.91, drawn in favor of the Day &

Night Bank, recited that it was "in full payment on last note against property in favor of J. H. Adkins." It appears that this check was paid August 7, 1923. He also introduced a check drawn in favor of D. K. Tackett for $300.93, which was supposed to have represented a payment on the other $525 note. The proof is not very satisfactory as to whether the last mentioned payment represented a payment on one of the notes against the property. Neither of the notes was assigned to Gilliam, and L. R. Thompson said that he examined the records in the county clerk's office the day he gave his deposition and that there was nothing of record to indicate that C. E. Gilliam had a lien against J. W. Cassady's one-half interest in the property. He said also that, after the mortgage was executed, Gilliam wrote to him and offered to sell his one-half interest to either Thompson or Victoria Cassady. We have noted that Victoria Cassady's note was not executed until the early part of 1926, some two and one-half years after Gilliam said he made the payment on the property. If Gilliam paid both of the $525 notes, as he says, he did nothing whatever in so far as this record shows, to assert any claim against J. W. Cassady's interest in the property before Mrs. Cassady's note was executed. She testified that she had no knowledge or information that Gilliam paid or had claimed that he paid both of the notes, or that he claimed any lien against J. W. Cassady's interest in the property. It must not be overlooked that we are looking at the alleged rights of C. E. Gilliam as against Mrs. Cassady, and not as against J. W. Cassady. Under the circumstances we think the trial court was correct in its finding in favor of Mrs. Cassady. The doctrine of subrogation must be enforced with due regard being given to the rights of others, and can not be invoked to work an injustice or to defeat a legal right or superior equity or to displace intervening rights of others. Maryland Casualty Co. v. Walker, 257 Ky. 397, 78 S. W. (2d) 34; Commonwealth v. Farmers Deposit Bank, 264 Ky. 839, 95 S. W. (2d) 793; National Surety Corporation v. First Nat. Bank of Prestonsburg et al., 278 Ky. 273, 128 S. W. (2d) 766.

It follows from what has been said that we think the judgment should be and it is affirmed.