## Evans' Adm'r v. Evans et al.

February 14, 1947.

W. J. Baxter, Judge.

Ross, Ross & Bayer for appellant.

Chenault & Parrish for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Sallie W. Evans and her husband, James E. Evans, owned jointly a small farm in Madison County of approximately 33 acres, which they acquired from William

Williams and others by deed dated April 17, 1895. On April 16, 1899, James borrowed $587.90 from his brother, George W. Evans, as will be shown later in this opinion, evidenced by a note signed by James and his wife, Sallie, which was secured by a mortgage of even date executed by both James and his wife and covered the entire farm.

James died in 1900 and his will devised all of his property to Sallie for life with remainder to his nieces and nephews, the children of his brother George. Soon after James' death, George instituted a suit against Sallie individually and as executrix of James to foreclose his mortgage, but he did not make his children, the remaindermen under James' will, parties to that action. At the decretal sale Sallie became the purchaser for $732.89, which she paid and obtained a deed from the master commissioner for the entire farm on January 27, 1902.

Sallie died intestate on October 8, 1939, and her administrator, State Bank & Trust Company, joined by her heirs, brought this action against the devisees of her deceased husband, James, and against her creditors to settle her estate. Sallie's heirs asserted title to the entire farm by reason of the master commissioner's deed. By answer, counterclaim and cross-petition as amended the devisees of James pleaded that they were infants at the time the foreclosure proceeding was brought and as they were not made parties thereto, the judgment was void and that Sallie obtained no title to her husband's one-half undivided interest in the farm by virtue of the master commissioner's deed. In a reply Sallie's heirs averred that if she did not take title to her husband's one-half interest in the land by reason of the master commissioner's deed, then she should be subrogated to the right of the mortgagee and should be adjudged a lien on her husband's undivided interest in the land in the sum of $732.89, the amount of the debt and costs, she paid for him, with interest from Oct. 26, 1901.

The reply was traversed, some proof was taken and the chancellor held the foreclosure judgment was void because James' devisees were not made parties to that action, but he adjudged that Sallie be subrogated to the right of the mortgagee, George W. Evans, in the amount she paid for her husband, but refused to allow interest,

and he adjudged her heirs a lien on James' one-half undivided interest in the land in the sum of $744. We do not understand how he arrived at the figure of $744 instead of $732.89, but this slight discrepancy is not mentioned in the briefs.

Sallie's heirs appealed and the devisees of James prosecuted a cross-appeal. In their brief appellants do not insist that Sallie obtained title to her husband's interest in this land by virtue of becoming the purchaser at the foreclosure sale. They appear to realize that the sale was void as to the infants, who were not before the court, Proctor v. Mitchell, 302 Ky. 179, 194 S. W. 2d 177, but that it was binding on Sallie who was before the court. Chapman v. Blackburn, 295 Ky. 606, 175 S. W. 2d 26; Perry v. Bailey, 290 Ky. 129, 160 S. W. 2d 617. Appellants' sole complaint is that the chancellor erred in not allowing interest from the time Sallie paid her husband's debt in 1901. It is earnestly urged by appellees on their cross-appeal that as Sallie was administratrix of her husband's estate when she purchased the property in the foreclosure proceedings, she held her husband's interest in trust for his devisees and that to allow her to be subrogated to the mortgagees' right would work a hardship on the devisees.

In determining whether Sallie was entitled to be subrogated to the right of the mortgagee, we must first decide the question of whether she was a joint maker of the note with her husband or whether she signed same as his surety. The presumption is that all persons whose names appear as obligors on a note, in the absence of some showing to the contrary, are principals; and although the wife's name may appear below that of her husband's on a note, yet it will be presumed, as in the case of any other obligor, that she is the principal debtor, but that presumption may be rebutted by proof of surrounding circumstances indicating to the contrary. Longnecker v. Bondurant, 173 Ky. 427, 191 S. W. 286; Rusch v. Roehr, 294 Ky. 511, 172 S. W. 2d 205.

As the note in question was executed in 1899, and as all the parties to the transaction are dead, it is evident it is quite difficult, if not impossible, for the heirs of Sallie to prove by any direct evidence that she was surety and not principal on the note. In determining

whether or not the wife is surety the decision in each case must rest upon its own peculiar facts. National Bank of Kentucky's Receiver v. Snead, 267 Ky. 816, 103 S. W. 2d 269. Here, the mortgage recites:

"Know all men by these presents that James E. Evans and Sallie Evans wife of James E. Evans, for and in consideration of, Five Hundred & Eighty Seven & 90/100 Dollars ($587.90) TO HIM PAID (our emphasis) by G. W. Evans, the receipt of which is hereby acknowledged, does hereby bargain, sell, and convey to the said G. W. Evans * * *."

This statement in the mortgage, in our judgment, shows that the husband got the proceeds of the note and that his wife signed merely as his surety. Therefore under KS sec. 2127, which was in effect when this note was executed, now KRS 404.010, Sallie as her husband's surety was not bound on this note.

Subrogation is purely an equitable doctrine and it seems to have found its way into English Jurisprudence from the Roman Civil Law. It may or may not arise from contract and the right to the relief it affords depends on the facts and circumstances in each particular case. The doctrine is one of benevolence to prevent unjust enrichment and it attempts to do complete justice between the parties. It is no fixed or inflexible rule and its object is to prevent injustice. 50 Am. Jur. secs. 1-7, pages 678, 686; Fort Jefferson Imp. Co. v. Dupoyster, 112 Ky. 792, 66 S. W. 1048, 24 Ky. Law Rep. 1199, 2 L. R. A., N. S., 263; Ford v. Jones, 174 Ky. 252, 192 S. W. 28. It does not ordinarily apply to volunteers, but it may be invoked in favor of one who voluntarily pays a debt of another where the payor has some interest to protect. 50 Am. Jur. sec. 21, p. 696; Restatement of the Law of Restitution sec. 162, p. 653; Dupoyster case, supra; Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931.

In the instant case Sallie was not a volunteer when she paid her husband's debt, but it was necessary for her to do so to protect not only the life estate devised her by his will, but also to protect her own one-half undivided interest in the farm which was included in the mortgage. Therefore, under the authorities cited in the preceding paragraph she was entitled to be subrogated

to the lien the mortgagee held on her husband's one-half interest in the farm. The question of limitation was not raised by the pleadings.

Ordinarily one who is subrogated to the rights of a mortgagee is entitled to recover interest on the sum involved from the date of payment. 50 Am. Jur. sec. 121, p. 761; Broaddus v. Tevis, 297 Ky. 168, 177 S. W. 2d 901; Annotations, 107 A. L. R. 785. But here, the subrogee by satisfying her husband's debt was able to enjoy for more than 35 years the life estate he devised her in his half interest in this farm, and evidently the chancellor thought this compensated for the loss of the use of the money she expended  As subrogation is purely an equitable doctrine, we think in the circumstances here presented that the rights of the widow's heirs were fully protected when the chancellor adjudged them a lien for the amount she paid without allowing interest.

Appellees are correct when they say that subrogation cannot be invoked when it will work an injustice or displace intervening rights of others, as is borne out by Gilliam v. Cassady, 290 Ky. 477, 161 S. W. 2d 915. The facts in the instant case are quite different from those in the Gilliam opinion . There, Gilliam did nothing for two and a half years to assert his claim and in the meantime Mrs. Cassady had taken a mortgage on the property. To allow Gilliam to be subrogated to the right of the creditor whose claim he paid would have worked an injustice on Mrs. Cassady. In the case before us, the devisees of James suffered no injustice by Sallie being subrogated to the rights of the mortgagee because the debt of James had to be satisfied before they received any part of his estate. If Sallie had not paid it, their devise would have been subjected to its payment. Therefore, when Sallie satisfied that debt and became entitled to be subrogated to the rights of the mortgagee, James' devisees are in no worse position than they would have been in had she not paid it. To deny Sallie the right of subrogation would let James' devisees be unjustly enriched at Sallie's expense, or rather at the expense of her heirs.

The judgment is affirmed on the appeal and on the cross-appeal.