**David WINE, Lisa D. Webb, Appellants,**

v.

**GLOBE AMERICAN CASUALTY CO., Motorist Mutual Insurance Co., Aetna Casualty and Surety Co., Appellees.**

No. 95–SC–89–DG.

Supreme Court of Kentucky.

March 21, 1996.

Charles L. Cunningham, Jr., Charles E. Fell, Jr., Louisville, for Appellant Wine.

Thomas A. Klausing, Louisville, for Appellant Webb.

Walter L. Porter, Louisville, for Appellee Globe American Cas. Co.

B. Frank Radamacher, III, Louisville, for Appellee Motorist Mut. Ins. Co.

Perry Adanick, Melissa A. Stevens, Louisville, for Aetna Cas. and Sur. Co.

KING, Justice.

This case concerns whether the estate of a man killed in an automobile collision or three insurance carriers should have priority to payments by the uninsured tortfeasor. Three brothers, Robert, James and David Webb were passengers in an automobile driven by appellant David Wine. Because of the negligence of Wine, Robert and James Webb were injured and David Webb was killed in a one car collision. David Webb was survived by his wife, appellant Lisa Webb, and their three minor children.

The tortfeasor, Wine, was uninsured. David Webb was an insured under policies issued by Globe American Casualty Company, Motorist Mutual Insurance Company, and Aetna Casualty and Surety Company. Robert and James Webb were insured with Motorist and Aetna. Collectively the three insurance carriers paid $10,000.00 in basic reparation benefits and $137,500.00 in uninsured motorist benefits to Lisa Webb in her capacity as Administratrix of David's estate and as parent and next friend of David Webb's three minor children. Additionally, Motorist and Aetna paid $36,456.04 in benefits to their insureds, Robert Webb and James Webb.

Shortly after resolving the uninsured motorist claim with Lisa Webb, Globe initiated suit seeking judgment against Wine, the uninsured tortfeasor, for the amount of its subrogated interest. Motorist and Aetna intervened and sought identical relief. Lisa Webb was later joined as a party. Ultimately, an agreed judgment was entered in which Wine agreed to pay each insurance company the amount of its subrogated interest. He also agreed to pay Lisa Webb, individually and as Administratrix of David's estate, $250,000.00 above the sum the estate had previously received and an additional $240,-000.00 for the benefit of the three minor children.

After entry of the agreed judgment, Globe, Motorist and Aetna moved for an order awarding their subrogation claims a higher priority than the claims of Lisa Webb and David Webb's estate. The trial court issued an order of priority granting all three insurance carriers preferred status as judgment creditors by ordering that each must "receive full payment of their respective judgments entered herein prior to payment of any amounts on the judgment entered herein on Lisa D. Webb" as Administratrix or parent and next friend of the three Webb minor children. Both Ms. Webb and Mr. Wine appealed to the Court of Appeals which affirmed the Circuit Court's order. We granted discretionary review and reverse in part and affirm in part.

*SETTLEMENT OF THE UNINSURED MOTORIST CLAIM*

Three different insurance policies provided uninsured motorist coverage for the injuries and losses sustained by Lisa Webb and the Webb estate. Ms. Webb, in her dual capacity, settled uninsured motorist claims against all three insurance carriers. She, and her counsel, executed a release with Globe and Motorist. Aetna did not request a release.

The appellants, Webb and Wine, argue that we should adopt the "made whole" rule which provides that an insurance company's right of subrogation does not arise until the injured party is fully compensated for the

injuries sustained. The appellee insurance companies argue that the doctrine of subrogation from which the "made whole" rule arose is an equitable doctrine which can be modified by contract. They contend that in the instant case their insurance contracts and settlement releases preclude the application of the "made whole" rule and afford their claims a higher priority than those of the estate and Lisa Webb.

In determining the rights of an uninsured motorist carrier in obtaining reimbursement of the benefits it has paid an injured person we must look to: (1) the common law doctrine of subrogation; (2) pertinent statutory law; and (3) the contractual obligations of the parties.

## THE DOCTRINE OF SUBROGATION UNDER COMMON LAW

■ Subrogation is the rule of law which allows a party under a legal obligation to satisfy the debt of another and acquire the rights of the creditor against the debtor. *National Surety Corp. v. First Nat. Bank,* 278 Ky. 273, 128 S.W.2d 766 (1939).

The requisites for subrogation are usually described as (1) payment by one of a debt of another; (2) subrogee is not a volunteer; (3) the debt is not one for which the subrogee is primarily liable; (4) the entire debt must be paid unless the others who made payment are joined; and (5) subrogation must not work any injustice to the rights of others.

*Bryan v. Henderson Elec. Co.,* Ky.App., 566 S.W.2d 823, 825 (1978).

The appellants, Globe, Motorist and Aetna, each have a right of subrogation. This right permits each to be placed in the position of its insured in order to pursue recovery for the payments each was obligated to pay its insured.

■ The issue before us is not whether the right of subrogation exists, rather it is *when* does this right *arise?* In a world of limited resources, who has priority in its claim, the uninsured motorist carriers or its insured who sustained damages in excess of those benefits received from the carrier?

In *Williston on Contracts,* Section 1269, (Third Ed.1967) the author states:

The surety's right of subrogation does not arise ordinarily until the debt is paid in full. A partial payment of the debt, even though it may be the full amount for which the surety has bound himself, will not entitle him to subrogation to the creditor's rights and securities.

And at Section 1273:

There is no equity on which to base the deprivation of the creditor of any of his legal rights for the benefit of the surety until he has been paid in full.

In the absence of relevant statutory law or contractual obligations between the parties, the answer to when the right of subrogation arises is rooted in equity. In order to achieve "natural justice" we look to the purpose of subrogation and the relationship between the insurer and its insured.

The doctrine of subrogation has a long and rich tradition of benevolence and fairness, *Evans' Adm'r. v. Evans,* 304 Ky. 28, 199 S.W.2d 734 (1947), and is irrevocably anchored in principles of natural justice. *Movl Const. Co., et al v. Covington Trust & Banking Co.,* 258 Ky. 485, 80 S.W.2d 560 (1934). It was an invention of equity, designed to prevent unjust enrichment by requiring those who benefited from another paying their debt to ultimately pay it themselves. *Rollins v. Board of Drainage Com'rs,* 281 Ky. 771, 136 S.W.2d 1094 (1940). It was often called the rule of substitution because one legally required to pay the obligation of another became legally entitled to be substituted in the place of the creditor. *Lewis' Administrator v. United States Fidelity & Guaranty Co.,* 144 Ky. 425, 138 S.W. 305, 306 (1911); and *Rollins, supra.*

Because the goal of subrogation is to accomplish justice between the parties, under common law great care is taken to ensure that invoking the doctrine does not impair one with a superior equitable right. Accordingly, the doctrine is applied only after considering the rights of all parties and "where an injustice will be wrought" the doctrine will not be applied. *Rollins, supra,* at *Maryland Casualty Co. v. Walker,* 257 Ky. 397, 78 S.W.2d 34, 36 (1935).

These principles underlying the common law doctrine of subrogation must also underlie the determination of when the right to subrogation arises. Under common law, it has generally been held that no subrogation rights exist (or the right does not arise) until the insured has first recovered the full amount of loss sustained. In *Couch on Insurance 2d*, Section 61:64 (Rev.Ed.1983), the author states:

> [T]he insurer may in a given case have made the full payment required of it by its contract of insurance but this amount is not adequate to indemnify the insured in full. In such an instance, it has been held, *in absence of waiver to the contrary*, that no right of subrogation against the insured exists upon the part of the insurer where the insured's actual loss exceeds the amount recovered from both the insurer and the wrongdoer, after deducting costs and expenses. In other words, the insurer has no right as against the insured where the compensation received by the insured is less than his loss. [Emphasis added.]

In the context of uninsured motorist coverage, the purpose of the doctrine of subrogation is two-fold: the prevention of double recovery by the plaintiff and a prevention of a windfall to the tortfeasor by benefiting from the payment of the insurance carrier without ultimately bearing at least some of the cost. It is indisputable that Wine lacks sufficient assets to satisfy the judgment. Therefore, Lisa Webb, the Administratrix of the estate of her deceased husband, will never be fully compensated for the losses sustained, no less unjustly enriched. Granting priority to the uninsured motorist carrier would place the burden of loss squarely on the shoulders of the party least able to bear the loss and would defeat the age old, underlying principles of subrogation. On the other hand, granting the injured insured, not fully compensated, priority over the insurance carrier places the risk of loss on the entity paid to assume such risk.

Under general principles of equity, in the absence of statutory law or valid contractual obligations to the contrary, an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise.

### UNINSURED MOTORIST STATUTE

■ Next we turn to the uninsured motorist statute to determine if there is any statutory intent which modifies the equitable principle favoring the insured person being made whole before subrogation rights arise in favor of an uninsured motorist carrier.

Uninsured motorist coverage is mandated to be included in every "automobile liability or motor vehicle liability policy" unless specifically rejected. KRS 304.20–020(1). This legislation was adopted to provide indemnification to persons injured by financially irresponsible persons. This purpose is accomplished by the insured paying premiums to an insurance carrier guaranteeing that, if injured by an uninsured motorist, the insured will be compensated as if injured by a motorist with the statutory minimum liability coverage.

The appellee insurance carriers argue that the uninsured motorist statute establishes a priority of subrogation in favor of insurance carriers over the injured insured. They cite KRS 304.20–020(4) which provides:

> In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any judgment resulting from the exercise of any rights of recovery of such person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

We find no statutory preference in the subrogation rights of an uninsured motorist carrier in the above statute. The statute merely establishes a right of subrogation to the carrier. It is void of any reference to the priority of rights between the injured insured and the insurance carrier. Said another way, the statute establishes a right of subrogation but says nothing about when that right arises.

Cases in sister states and our own decisions lead us to conclude that the underlying

purpose behind the uninsured motorist statute requires the injured insured to be fully compensated before the carrier's right of subrogation arises. To hold otherwise would defeat the purpose of the statute and reduce it to an illusion.

*Milbank Mutual Insurance Co. v. Kluver,* 302 Minn. 310, 225 N.W.2d 230 (1970), a case decided by the Minnesota Supreme Court, is instructive. Minnesota's uninsured motorist statute was remarkably similar to our statute in all relevant ways. The *Kluver* court held that to allow the insurance carrier subrogation before its insured was fully compensated would lead to an "absurd" result and permit the carrier "to avoid the statutory obligation imposed" by the Minnesota uninsured motorist statute. *Kluver,* 225 N.W.2d at p. 232.

In previous cases we have held that the remedial purposes intended by the uninsured motorist statute and the underinsured motorist statute outweigh a carrier's contractual subrogation rights. For example, in *Puckett v. Liberty Mutual Insurance Co.,* Ky., 477 S.W.2d 811 (1972), we held unenforceable an insurance policy provision requiring joinder of the tortfeasor. Fully recognizing the unavoidable consequence of destroying the insurance carrier's subrogation right, we stated:

> [I]nsurance against uninsured motorist owes its existence to the probable and usual worthlessness of a claim against an uninsured tortfeasor. The policy of our statute places the insured party's right to sue in this state above the dubious value of the insurer's right of subrogation. *Id.* at 814.

In *Coots v. Allstate Ins. Co.,* Ky., 853 S.W.2d 895 (1993), we discussed the "younger sibling" to uninsured motorist coverage, underinsured motorist coverage, and highlighted their similarities. In *Coots,* we recognized that a carrier's "subrogation right cannot be absolute because in some instances it is inimical to the right" of the policy holder. *Id.* at 901. We quoted from Widiss, *Uninsured and Underinsured Motorist Insurance,* 2nd ed. (1992), sec. 44.4, p. 129–30:

> The fundamental characteristic of the underinsured motorist insurance is that it is only relevant when the tortfeasor's insur-

ance is not adequate to provide indemnification. When this is the case, the assertion of a right of subrogation—by the underinsured motorist insurer in regard to the tortfeasor or the tortfeasor's insurer—is inimical to the very character of the underinsured motorist coverage so long as the insured has not been fully indemnified. The proposition that an insurer should be precluded from seeking reimbursement unless the insured has been fully indemnified seems to be almost *beyond rational dispute.* (Emphasis added.)

The uninsured motorist statute must be construed to effect its purpose. To interpret it in a manner which would permit a carrier's right of subrogation to arise before the insured is fully compensated would defeat the purpose of the statute. Accordingly, we hold that under the uninsured motorist statute, absent valid contractual terms to the contrary, an insurance carrier's right to subrogation does not arise until the injured insured has been fully compensated (made whole) for injuries and losses sustained.

## THE CONTRACTUAL OBLIGATIONS OF THE PARTIES

■ The last area we review to determine the respective rights of the uninsured motorist carrier and its insured is the understanding between the parties. In the present case that understanding arises from two sources, the insurance policies and the executed releases. We must decide whether the equitable doctrine of subrogation is modified by the contracts of the parties.

All three insurance policies contained language like or similar to that included in the Aetna policy:

> If we make a payment under the policy and the person to and for whom payment was made has a right to recover damages from another, *we shall be subrogated to that right.* That person will do whatever is necessary to enable us to exercise our rights and shall do nothing after loss to prejudice them; (b) if we make a payment under this policy and the person to and for whom payment is made recovers damages from another, that person shall hold in

trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment. (Emphasis added.)

▓▓▓ The parties direct us to cases from other jurisdictions which address the issue of whether the equitable principles of subrogation may be modified by an insurance policy. Some jurisdictions declare any such provision unenforceable and void as against public policy while others honor such provisions if they are clear and explicit. We need not address this issue because the three insurance policies in question contain no clause which contravenes the equitable principles outlined earlier in this decision. The policy language cited above only provides the insurance carrier the **right** of subrogation, i.e., at some future time to be substituted in the place of its insured. The policies do not express an intent to invest the carrier with a **priority** over its less than fully compensated insured. It is well established in our Commonwealth that an insurance carrier "must be held strictly accountable for the terms of the contract" it prepares. *Wolford v. Wolford*, Ky., 662 S.W.2d 835, 838 (1984). Furthermore, when a contract has two reasonable constructions, "the one most favorable to the insured must be adopted." *Id.*

Accordingly, we hold the policy language outlined above only gives the carrier the right of subrogation and, in keeping with the equitable principles of subrogation, that right does not arise until the insured is fully compensated (made whole) for injuries and losses sustained.

Lisa Webb, as Administratrix of the estate of her deceased husband, settled the estate's uninsured motorist claim with each of the three insurance carriers. At all relevant times she, the estate and the children were represented by counsel. She entered into a release with Motorist and a release and trust agreement with Globe. Aetna paid the full amount of the uninsured motorist benefits without requesting any documents be signed.

▓▓▓ Both Motorist and Globe argue the contractual language contained in their releases provide them first priority of payment. Because the documents contain substantially different language, we must analyze them separately.

The release with Ms. Webb entered into with Motorist provides:

Lisa D. Webb, Administrator, assigns and transfers to Motorist all rights and claims Lisa D. Webb, Administratrix, may have against uninsured motorist as a result of this accident.

INSURED agrees to hold in trust for MOTORISTS any money received from UNINSURED MOTORIST.

▓▓▓ Although in abstract terms an assignment differs from subrogation, in the field of insurance subrogation the distinction is academic and not a substantive matter. *Bryan v. Henderson Elec. Co.*, Ky.App., 566 S.W.2d 823 (1978); and 6 W. Clay, *Kentucky Practice*, pp. 313–314 (3rd ed. 1974).

When the right of the insurer to subrogation is formalized by the execution of an express assignment of the claim against the tortfeasor, the status of the insurer is nevertheless that of a subrogee rather than an assignee. The assignment adds nothing to the rights vested in the surety by the doctrine of subrogation. *Couch on Insurance, 2d*, Section 61.108 (Rev.Ed. 1983).

The above-cited release gave Motorist a right of subrogation and substituted it in the place of the estate for the uninsured motorist benefits paid. The release provides Motorist written documentation of the amount of its subrogated interest and permits it, at some later time, to seek reimbursement. This document in no way modified the rights of the parties under the doctrine of subrogation and in no way subordinated the insured's equitable right to full recovery to that of the insurance company.

▓▓▓ On the other hand, the Globe "Release—Trust Agreement Under Uninsured Motorists Protection Coverage" is significantly different in scope and purpose. It provides:

We ... agree to hold any moneys received as a result of settlement or judgment in trust for the company, *to be paid to the company immediately upon same coming into my/our hands;* provided that any sum

received in excess of the amount paid by the company, including legal or other expenses incurred by it in completing the recovery, shall be retained by me/us. (Emphasis added.)

The contractual language clearly and explicitly documents the intent of the parties to: (1) provide Globe with the right of subrogation; (2) permit that right to arise immediately; and (3) thereby subordinate Lisa Webb's interests in any further recovery in favor of Globe until Globe is reimbursed for the payments made.

■ Our Commonwealth recognizes two types of subrogation, legal and conventional. Because Globe's subrogation rights are derived by contract, this is an example of conventional subrogation. Both legal and conventional subrogation are governed by equity and generally require the insured to be fully compensated for injuries and losses sustained before an insurer's right of subrogation arises. However, subrogation rights may be modified by contract, provided violence is not done to established equitable principles. *See Westendorf v. Stasson,* 330 N.W.2d 699, 703 (Minn.1983) and citations therein.

Here, when the uninsured motorist claim was negotiated, each party was represented by counsel and enjoyed a parity in bargaining position. Furthermore, the insured's losses had already been sustained and were fully known and appreciated. In exchange for valuable consideration each transferred certain legal rights. This agreement does no harm to equitable principles and in no way is violative of our Commonwealth's public policy. Accordingly, we hold that under the facts of this case the doctrine of subrogation was modified by Globe and Lisa Webb and such modification is valid.

*ADDITIONAL BENEFITS*

Globe, in its role as a reparation's obligor, paid Lisa Webb the sum of $10,000 in basic reparation benefits. Motorist and Aetna paid the non-party Webb brothers, Robert and James, the collective sum of $26,456.04 in basic reparation benefits and $10,000 in uninsured motorist benefits. Citing to KRS 304.20–020(4) and 304.39–070(2), which establish the insurers' right to subrogation, the trial court ordered that the three insurers "shall each first receive full payment of their respective Judgments" prior to Lisa Webb or the estate receiving any payments. This had the effect of giving priority to all three insurers' subrogation claims over the claims of Lisa Webb and the estate.

■ A reparation obligor is entitled to assert a subrogation claim against an uninsured motorist. *State Auto. Mut. v. Empire Fire & Marine,* Ky., 808 S.W.2d 805 (1991). This right is derived from KRS 304.39–070(2) which provides:

A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person.

This statutory provision is limited to creating the reparation obligor's right to subrogation and provides no authority for establishing a preference on behalf of either party. However, the Motor Vehicle Reparations Act does contain an express legislative pronouncement concerning the priority of claims between the victims of motor vehicle collisions and their insurance carriers. This provision, KRS 304.39–140(3), states:

If the injured person, or injured persons, is entitled to damages under KRS 304.39–060 from the liability insurer of a second person, a self insurer or an obligated government, collection of such damages shall have priority over the rights of the subrogee for its reimbursement of basic or added reparation benefits paid to or in behalf of such injured person or persons.

■ The Motor Vehicle Reparations Act clearly subordinates the subrogation rights of a reparation obligor to the rights of a victim of a motor vehicle collision when the tortfeasor is insured. Because the purpose and intent of the uninsured motorist statute is to treat the insured victim as if the tortfeasor is insured, we hold the subrogation rights of the reparation obligor against the uninsured tortfeasor are subordinated to those of the injured victim. Thus, a reparation obligor's right to subrogation does not arise until its

**566**

insured has been fully compensated for the injuries and losses sustained as a result of the negligence of an uninsured motorist.

The Globe release concerned uninsured motorist benefits, not basic reparation benefits. Thus, we do not address whether a reparations obligor can subordinate the rights of its insured to its own right to subrogation. Accordingly Lisa Webb has priority over Globe for the reparations benefits paid.

The trial court also effectively granted Motorist and Aetna preference for the payments made by them to the non-party Webb brothers. All subrogation rights are derivative and the insurer only acquires the rights of its insured. A subrogee is substituted in place of its insured; it does not acquire greater rights. *Fireman's Fund Ins. v. Government Employees Ins.*, Ky., 635 S.W.2d 475 (1982).

Here, because the Webb brothers were not parties to this suit, the brothers have no statutory, contractual or equitable basis for having a preferred status over the Webb estate. In view of the fact they possess no such preferred status, their carrier can acquire no greater right.

Having considered the other issues raised in the briefs, we find they are without merit and decline to discuss them.

Accordingly, we affirm in part and reverse in part and remand this case to the trial court for proceedings in accord with this opinion. By virtue of its release, Globe has priority over the estate to the first $25,000 in payments by Wine. The estate and the children are entitled to the next $490,000 in payments. The following $122,500, representing uninsured motorist and basic reparations benefits to Lisa Webb and the estate, is payable to Globe, Motorist and Aetna. Finally, Aetna and Motorist are entitled to receive $36,456.04, representing their payments to the non-party Webb brothers. Interests shall accrue to the respective parties in accordance with the judgment entered by the trial court.

STEPHENS, C.J., and KING, STUMBO and WINTERSHEIMER, JJ., concur.

GRAVES, J., concurs in part and dissents in part. He would apply the made whole doctrine despite the language of Globe's release and would give priority to the estate for the first $490,000.00 in payments by Wine. Otherwise, he concurs in the opinion.

LAMBERT, J., dissents by separate opinion.

LAMBERT, Justice, dissenting.

The majority opinion has virtually abolished subrogation rights arising out of uninsured motorist claims. It has wholly embraced the idea that until an injured party is "fully compensated" and "made whole," the insurance carrier paying pursuant to uninsured motorist coverage shall not receive any subrogation payments. By concluding also that full compensation is generally impossible for injuries and damages so horrendous as these, the majority has established a standard which can rarely, if ever, be achieved.

If this Court were at liberty to establish the law and public policy as we believe it should be, the majority view with respect to the "made whole" rule would have some appeal. Such would recognize that the insurer is paid to undertake the risk that an insured may be injured by a financially irresponsible motorist. In fact, however, we have no such right with respect to public policy or the determination of risk. Those decisions have been made by the General Assembly with its enactment of statutes and by the parties through their contractual undertakings.

The public policy of this Commonwealth is found in KRS 304.20-020 whereby automobile insurance carriers doing business in Kentucky are required to furnish uninsured motorist coverage unless such coverage is specifically rejected. KRS 304.20-020. *Hamilton v. Allstate Ins. Co.*, Ky., 789 S.W.2d 751 (1990). The foregoing statute provides, in part, that coverage shall be in the amounts required for bodily injury or death set forth in KRS 304.39-110, the mandatory liability insurance statute. An essential component of our public policy is found in KRS 304.20-020(4) which provides as follows:

In the event of payment to any person under the [uninsured motorist] coverage

required by this section ... the insurer making such payment shall ... be entitled to the benefits of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made....

The majority has construed the foregoing statute as creating a right of subrogation but as being silent with respect to priority.

In my view, any such construction is pure sophistry. The subrogation provision appears as subsection (4) of a four-part statute which establishes the legal requirements for uninsured vehicle coverage. When it says "the insurer making such payment shall ... be entitled to the proceeds of any settlement or judgment ...," it could only mean that the first and every succeeding dollar recovered from the tortfeasor shall be used to reimburse the uninsured motorist carrier. Such a construction would be entirely consistent with our decision in *Bailey v. Reeves*, Ky., 662 S.W.2d 832 (1984), by which we are required "... to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Id.* at 834. Words have meaning and these words mean that upon payment pursuant to an uninsured motorist policy, the carrier making payment shall be entitled to the proceeds of any recovery from the tortfeasor to the extent of its payment. In *Commonwealth, Transportation Cabinet v. Roof,* Ky., 913 S.W.2d 322 (1996), we specifically rejected a proposed construction of KRS 44.070(1) which would have subtracted the amount required to be offset from the claimant's total damages, i.e., that which would have accommodated the "made whole" doctrine. *Id.* at 325. Instead we held that the offset must be from the maximum available Board of Claims award. *Id.* at 326. *Roof* stands for the proposition that in circumstances where the General Assembly possesses the prerogative to impose limitations or conditions upon damage awards, this Court will respect that prerogative and give it application when statutory intent is clear. *Id.*

The majority concedes that all of the insurance policies here under review contain provisions which establish contractually the right of subrogation. It dismisses such provisions with the same facile argument made concerning the statute, "the policies do not express an intent to invest the carrier with priority over its less than fully compensated insured." It also undertakes to discover an ambiguity which may then be construed in favor of the insured.

The same sophistry referred to hereinabove is at work with respect to construction of this policy provision. The substantive language by which these parties are bound is as follows:

If we [the insurance carrier] make a payment under the policy and the person to and for whom payment was made [Webb] has a right to recover damages from another [Wine], we shall be subrogated to that right.[1]

It is contrary to any reasonable construction to suggest that the foregoing provision fails to establish priority. Quite plainly it grants an insurance carrier which has paid pursuant to an uninsured motorist policy provision the right to recover the damages to which the injured person would otherwise have been entitled until all such payments are reimbursed.

The fundamental flaw in the majority opinion is in its wedding to the concept of full compensation. Believing, as it does, that an injured party should receive all available funds until he or she is fully compensated, and further believing that full compensation is impossible, the practical conclusion is that no subrogation will be allowed. In a perfect world where resources were unlimited, the full compensation standard would be appropriate. In the real world, it is not.

Uninsured motorist coverage exists to compensate injured persons when the tortfeasor has failed to comply with the mandato-

---

1. Subrogation is defined in BLACK'S LAW DICTIONARY 1279 (6th ed. 1979) as "the substitution of one person in the place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities."

ry liability insurance statute. If the tortfeasor has complied with the liability insurance statute and purchased even minimum policy limits, no payment is due under the uninsured motorist coverage.[2] This alone is sufficient to defeat the "full compensation" concept which is so fundamental to the majority opinion. Under the majority opinion, a motorist who has uninsured vehicle protection will be better off being injured by an uninsured tortfeasor than by one who has minimum limits. This is so because the injured person will recover all available benefits from his or her uninsured motorist coverage plus whatever additional sums can be wrested from the personal assets of the tortfeasor. Such an anomaly should not be written into Kentucky law.

---

2. KRS 304.20–020(2) defines "uninsured motor vehicle," *inter alia,* by reference to KRS 304.39– 110, the mandatory liability insurance statute.