# Cincinnati, N. O. & T. P. Ry. Co. v. Falconbury.

## Same v. Johnson.

(Decided May 20, 1938.)

HUNT & BUSH, KELLY J. FRANCIS and GALVIN & TRACY for appellant.

BAKER & BAKER, T. J. HILL and R. L. POPE for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellees, Stanley Falconbury and Irvin Johnson, instituted their respective suits in the Lincoln circuit court against the appellant railway company for the recovery of damages received by them when an automobile in which they were riding ran through the bannister or guardrails of an overhead bridge constructed over the railroad tracks of appellant near Kings Mountain Station in Lincoln County, Ky.

It appears that about the year 1920, in order to eliminate a grade crossing near Kings Mountain Station, by contract or mutual arrangements between appellant and the county court of Lincoln County, the bridge in question was constructed by appellant over its railway tracks about one thousand feet north of Kings Mountain Station. The railroad track at this point runs practically north and south and the bridge runs east and west. Pursuant to the arrangements between the appellant and Lincoln County, a road was constructed from Kings Mountain Station running north and paralleling the east side of the railroad track to the east end of the bridge or overhead crossing, and thence turn west across the bridge, and at the west end of the bridge one road continued on east known as the Duncan road, but at the west approach of the bridge the road intersected with another road known as Fishing Creek road, which paralleled the railroad track in a southerly direction.

On a day in April, 1936, the appellees were traveling north on Fishing Creek road in the direction of the bridge and at the approach of the bridge turning east across it there was a sharp turn, and it is claimed by appellees that in making the turn the right rear wheel

of their automobile struck the end of a sill of the bridge which projected 12 or 13 inches beyond the last upright timber which supported the bannister on the south side of the bridge, and as a result of contacting the sill appellee Johnson, who was driving the car, lost control of it and it crashed through the guardrails on the south side of the bridge, falling about 23 feet to the railroad track or right of way, resulting in the injuries they have sued for. It was shown that this projecting end of the sill had been worn down by the traffic to a thickness or height of about 4 inches.

Plaintiffs base their action upon the alleged negligence of appellant in the construction and maintenance of the bridge and the approaches thereto, and alleged that the guardrails, bolts, sills, and bannisters of the bridge were in a decayed and unsafe condition, and that the bridge was unsafe and unfit for the traveling public, all of which was known to appellant, its agents and employees, or could have been known by the exercise of ordinary care.

The two actions were consolidated and heard as one and the jury returned a verdict in favor of Falconbury for the sum of $3,000, and for Johnson in the sum of $1,000, and to reverse those judgments the railroad company has prosecuted this appeal, insisting upon a reversal of the judgments upon various grounds, among which is that the evidence failed to show any negligence of appellant in the construction or maintenance of the bridge, and that the court should have sustained its motion for a directed verdict in its favor.

Appellee Johnson testified that when he approached the bridge he was driving about 15 or 20 miles per hour, but when he reached the grade near the bridge he slowed his speed to 8 or 10 miles per hour and changed to low gear in order to make the grade, and when he pulled upon the bridge he felt a jerk when the car hit the guardrail or sill which was projecting about 12 or 13 inches beyond the last upright, but he said he did not see the sill until after he had recovered from his injuries and went back and viewed the bridge. He was asked how he knew that the car wheel struck the beam or sill, and he answered, "There wasn't anything else there I could have struck." He said that the rear end of the car slipped around to the left and the car went through the bannister to the right before he could stop it.

Appellee Falconbury said that the car "bounced around and hit," but said he could not see what it hit.

Four witnesses, including the doctor who treated Johnson for his injuries, testified that within a short time after the accident both plaintiffs stated that the steering gear of the car locked, which was the cause of the accident. One witness testified that he asked Johnson how it happened and he said he was coming around on the bridge and the steering gear locked and he could not turn it back and he kept cutting it but it went over before he could straighten it; that he "thought he would twist the steering wheel in two trying to turn it." However, appellees denied making these statements, which, of course, was an issue for the jury on that point. As to whether or not the wheels of the car struck the sill of the bridge, the evidence is indeed very meager. Both appellees testified that the car jerked like it struck something, but they did not see what it struck, and that they did not see the sill of the bridge at that time nor at any time until they viewed the bridge after they had recovered from the accident. It is doubtful that their evidence shows anything more than a guess, surmise, or speculation that the car struck the sill of the bridge.

The bridge was 20 feet wide, and along the sides of the roadway were laid wheel guards, something similar to street curbing, consisting of timbers 6" x 6". Plaintiffs were driving a 1928 or 1929 model Ford car and claimed that at the time the wheel of the car contacted the end of the sill they were driving at 8 or 10 miles an hour in low gear and the rear of the car turned to their left and the car crashed through the bannisters so quickly they did not have time to stop it. They do not claim that the car turned directly across the driveway so as to squarely face the curb rails. Evidently the car struck the 6-inch curb rail diagonally, and it was necessary for it to go over the curb before reaching the bannisters. It is hardly conceivable that a light car running 8 or 10 miles per hour in low gear and contacting a timber 4 inches thick would have turned the rear of the car diagonally across the road and still maintain sufficient momentum or force to run over the 6-inch curb rail and crash through the bannisters before it could have been stopped. The physical facts and conditions strongly contradict plaintiffs' theory of the cause of the accident.

But, conceding arguendo that the evidence was suf-

ficient to make an issue as to whether the car wheel struck the sill of the bridge, and as to the rate of speed plaintiffs were traveling and other facts detailed by them, we do not think the evidence sufficient to warrant a recovery on the ground that the sill of the bridge extended a distance of about one foot from the bannister.

From photographs and a map of the bridge filed with the record, it is shown that the sill on which the uprights stood and which plaintiffs claimed the car struck was a part of the bridge, as originally constructed, a fact which is not denied. The sills are a necessary part of the bridge, and the fact that the uprights and bannisters were not flush or even with the sill does not constitute a negligent construction, and there is no complaint that this sill was out of repair or had moved from its original position so as to indicate a negligent maintenance of the bridge. If the uprights had been placed flush or even with the sill, when the wheels of automobiles were close to the sill or curb the fenders and running board would come in contact with the uprights, and it might then be argued with as much force that it was negligence to place the uprights flush with the sills so as to contact fenders and running boards of a car, as it would be to set the uprights back from the end or edge of the sill so that the fenders and running boards of automobiles would not contact the uprights when the automobile wheels were near or touching the sills.

The driveway being 20 feet wide, we do not think that the meager distance the sill projected from the bannisters and only 4 inches thick at that point was such an obstruction of the driveway or negligent construction of the bridge as to make the driveway unsafe or dangerous for travel by motor car or otherwise.

It is next argued that the bannisters of the bridge were in a decayed condition and insufficient to stop an automobile when run against them, and that combined with the projecting sill was one of the proximate causes of the accident.

The question of the strength of railings and bannisters of bridges and streets has been before this court on numerous occasions. In the case of Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S. W. (2d) 1032, it appeared that Division street in Catlettsburg ended at the river bank, but there were no bannisters, railings,

or anything indicating the end of the driveway. Watkins' automobile went over the end of the street into the water and Watkins was drowned. His administrator sued the city of Catlettsburg, alleging negligence on its part in failing to guard the end of the street by maintaining a barrier to separate it from the descent to the river and to prevent automobiles from going over the bank. In discussing this duty on the part of cities or others whose duty it is to maintain such bannisters or barriers, the court said (page 1034):

> "When it comes to an application of that general rule, where the condition is obvious and the elements of concealment of the danger or notice thereof are not involved, it is held that there is no duty to maintain a barrier of sufficient strength to resist the force of an automobile or to prevent it from going over an embankment alongside the highway, even though at a curve, presenting a hazardous condition.

> \* \* \* \* \* ·

> "Here the accident occurred in broad daylight and the driver of the automobile, as well as the decedent, his guest, were very familiar with the conditions. The danger was obvious, and the only claim of negligence is a failure to fortify rather than to notify."

It appears to us that the facts in the case at bar bring it within the rule of the case supra. Plaintiffs were driving in daylight on a roadway of a bridge 20 feet wide. They testified that they had crossed the same bridge twice before· the accident on the same day, and evidently were familiar with the driveway. There was no concealment of danger or other features or conditions tending to mislead travelers on the highway.

Also, in City of Catlettsburg v. Sutherland's Adm'r, 247 Ky. 540, 57 S. W. (2d) 512, Sutherland was driving his automobile around a hill with an embankment on one side. Originally a 6-inch concrete curb had been constructed at the edge of the concrete roadway next to the embankment and the car ran over the embankment resulting in Sutherland's death. His administrator sued the city, alleging, among other things, that the city had negligently permitted the concrete curb to become broken and defective and that such negligence caused Sutherland's death. The administrator recov-

ered judgment in the lower court upon the alleged negligence of the city to properly maintain the street curb. But on appeal to this court it was held that there was no duty on the city to maintain the curb as a protection to highway travelers.

Appellees, plaintiffs below, rely among other cases, on Louisville & Nashville Railway Company v. Hadler's Adm'r, 269 Ky. 115, 106 S. W. (2d) 106, wherein it is said (page 112):

> "* * * imposed upon appellants the duty of maintaining on the bridge a guard rail around the curve of reasonably sufficient strength and dimension to prevent motor vehicles from running off the bridge."

However, the facts in that case differ from the facts in the present case. The question of contract with the city by the railroad company was involved in that case and had considerable bearing upon the duties of the railway company. And another distinguishing feature in that case is that the bridge roadway led upward parallel to the tracks for some distance and then curved sharply across the tracks and descended on the other side. The motorcar in which Hadler was riding ascended until the curve was reached and, instead of turning, the driver proceeded straight ahead, ran over a sidewalk and through a railing which guarded the walkway. That accident happened in the nighttime and at a right-angle turn in the street, and straight ahead in front of the driver beyond the precipice over which the car ran there was a street light erected on a pole which would indicate to a driver in the night that the street ran straight ahead, thus creating a misleading and treacherous situation. It appears that that case comes within the exception to the rule mentioned in the Watkins Case, supra, in that there was an apparent concealment of danger or notice thereof, instead of the condition being obvious and no elements of concealment of danger, as pointed out in the Watkins Case. Without quoting or elaborating on that opinion, it is sufficient to say that it discloses a state of facts involving contractual duties and relations on the part of the city with the railroad company as well as a treacherous condition, as we have described above, and, perhaps, other distinguishing features.

It is our conclusion that the facts in the present case with respect to the bannisters or guardrails of the

bridge come within the class of notification rather than fortification and, under the proven and admitted facts as well as the attendant circumstances disclosed in the record, we do not think that plaintiff's evidence disclosed any negligence upon the part of appellant railway company, and that the court should have directed the jury to return a verdict in favor of appellant. These conclusions make it unnecessary for us to discuss or determine other questions raised, all of which are reserved.

Wherefore, the judgment is reversed and remanded for proceedings consistent with this opinion.