COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

AUTOMOBILE CLUB INSURANCE COM-
PANY, Appellee.

Court of Appeals of Kentucky.

May 14, 1971.

Don Duff, Carl T. Miller, Jr., Depart-
ment of Highways, Frankfort, Kenneth S.

Baker, Jackson, Jarvis Allen, Department of Highways, Pikeville, for appellant.

Robin Griffin, Miller, Griffin & Marks, Lexington, for appellee.

NEIKIRK, Judge.

Pursuant to KRS 412.030, the Automobile Club Insurance Company instituted before the Board of Claims this action seeking contribution from the Commonwealth of Kentucky, Department of Highways (hereinafter "Department"). The Board entered an order directing the Department to pay $7,000 as contribution to the Insurance Company. The Franklin Circuit Court upheld the award. The Department appeals. We affirm.

At the origin of the action, appellant had filed with the Board of Claims a motion to dismiss appellee's claim. Appellant contended that the statute waiving the immunity of the Commonwealth makes no provision for contribution by the Commonwealth to a joint tort-feasor and that the Board had no jurisdiction to consider appellee's claim. The Board sustained appellant's motion and dismissed the action. The Franklin Circuit Court upheld the Board's determination. On appeal to this court the judgment was reversed. Automobile Club Insurance Company v. Commonwealth, Department of Highways, Ky., 414 S.W.2d 578. There, we said:

"* * * The basis of the action is the alleged negligence of the Commonwealth. The company must convince the board that negligence of the Commonwealth was a proximate cause of the accident before it can obtain an award. Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086.

"We believe it is within the intent of the legislature in enacting KRS 44.070 that a tort-feasor (or person subrogated to his rights), who has settled a claim based on the negligence of the joint tort-feasors, should be able to recover the Commonwealth's share of the obligation when the latter is one of the joint tort-feasors."

The evidence before the Board shows that on August 5, 1964, appellant opened for general public travel and use a road leading from Kentucky Highway 77 to Hemlock Lodge in Natural Bridge State Park. The improved blacktop-paved road is 1500 feet in length and generally "S-shaped" and ascends a hill approximately 130 feet in elevation from the point where it crosses a creek to where the road terminates at the lodge.

On August 29, 1964, Harold Leggett, aged 16, drove a 1963 Dodge crewcab belonging to his father, James Leggett, Jr., from Lexington, Kentucky, to Natural Bridge State Park. The vehicle was equipped with a passenger cab and quarter-ton pickup body. Robert Riggs, a friend of Harold's, also made the trip in a passenger automobile. Both motor vehicles had passengers and all made the excursion to attend a picnic at the park and later to attend a square dance. After the picnic, which was held on a creek in the park near the entrance to the road leading to the lodge, the automobile driven by Riggs proceeded up the hill to the lodge. Leggett followed. The parties saw the new facility, turned around, traversed the parking lot, and started down the hill. Riggs was followed by Leggett. Riggs drove around the first curve, but Leggett failed to negotiate the turn. His motor vehicle skidded, went over the steep embankment, turned over, and came to rest upside down. Frank Fuller, a 14-year-old passenger, was killed in the accident. The administrator of the estate of Fuller instituted a wrongful death action against the Leggetts which was settled by the appellee for $14,000.

Appellant contends that the Board, after hearing all the evidence as this court directed in Automobile Club Insurance Company v. Commonwealth, Department of Highways, supra, erred in directing the appellant to pay $7,000 as contribution to the appellee.

The pertinent portion of the Opinion and Award of the Board of Claims is as follows:

"(2) That the defendant was negligent by failing to provide guard rails and signs to indicate the hazardous condition of the curve that the Leggett vehicle failed to negotiate and that this negligence on the part of the Commonwealth was a proximate cause of the accident.

"(3) That plaintiff's settlement in the amount of $14,000.00 was a reasonable settlement; that plaintiff has a right to contribution from the defendant and that $7,000.00 is the proper amount for the defendant to contribute."

█ The appellant contends in this appeal, as it did in its first appeal and petition for rehearing, that the Commonwealth cannot be held jointly or equally liable with other joint tort-feasors toward injured third parties so as to make the Commonwealth liable for contribution to other tort-feasors, and further that there can be no contribution from the Commonwealth if the parties were not in pari delicto. We held otherwise in Automobile Club Insurance Co. v. Commonwealth, Department of Highways, supra. Appellant insists that the decision as previously rendered in this case is wrong and should be overruled. We disagree.

The controlling point in issue on this appeal is: Did the Board of Claims err in finding the appellant negligent in not erecting guardrails and signs on the road? We hold that the evidence supports the Board's finding that the Commonwealth was negligent and that this negligence was a proximate cause of the accident.

█ There were no signs or guardrails or other barriers such as posts at or near the curve where the accident occurred. Appellant Department contends that it is under no compulsion to place guardrails or curve signs at every curve along its highways. We agree. But it is also true that the public authority having control over a highway has a duty to keep it in a reasonably safe condition for travel, to provide proper safeguards, and to give adequate warning of dangerous conditions in the highway. This includes the duty to erect warning signs and to erect and maintain barriers or guardrails at dangerous places on the highway to enable motorists, exercising ordinary care and prudence, to avoid injury to themselves and others. The appellant is under no duty to provide warning signs, guardrails, or barriers when an unusual or dangerous condition does not exist. Neither is it appellant's duty to erect guardrails or barriers of sufficient strength to withstand any degree of force. However, it is appellant's duty to furnish adequate protection for the general traveling public and users of the highway facilities. 39 Am.Jur.2d, Highways, Streets, and Bridges, Section 403, page 800; 40 C.J.S., Highways, Section 262, page 306; Louisville & N. R. Co. v. Hadler's Adm'r, 269 Ky. 115, 106 S.W.2d 106; Cincinnati, N. O. & T. P. Ry. Co. v. Falconbury, 274 Ky. 518, 119 S.W.2d 563.

In Commonwealth, Department of Highways v. Compton, Ky., 387 S.W.2d 314, we said:

"* * * it appears the responsibility imposed upon the Department of Highways by case law and by statute is to make known to the traveling public any hazards which exist on any roads under its supervision and which are known to it or that could have been reasonably ascertained by it. * * *"

In Commonwealth, Department of Highways v. Higdon, Ky., 383 S.W.2d 331, we said:

"The duty of the Commonwealth is to exercise ordinary care in keeping its highways in a reasonably safe condition for public travel. That duty may be performed by remedying, warning, or guarding against, the danger. Signs may give adequate warning of a hazardous condition in a highway when their mes-

sage sufficiently relates to the danger and their location is at a distance which permits the public to avoid such danger. * * * ".

In Commonwealth, Department of Highways v. Begley, Ky., 376 S.W.2d 295, we said:

"With respect to defective or hazardous conditions of the highways (which include bridges), the duty of the Commonwealth, as well as private corporations and municipalities, is to exercise ordinary care to keep the highways under its charge in a reasonably safe condition for public travel. Shrader v. Commonwealth, 309 Ky. 553, 218 S.W.2d 406 (1949); Commonwealth v. Dever, 284 Ky. 150, 143 S.W.2d 1065 (1940); Louisville & Nashville R. Co. v. Muncey, 229 Ky. 538, 17 S.W.2d 422 * * *."

*　*　*　*　*　*

"* * * The negligence of the Commonwealth rests not in the creation of the hazardous condition, but in permitting the situation to continue without attempting to remedy, warn, or guard against the danger."

In the instant case the Board of Claims, as the fact-finding body, found the appellant, under all the prevailing circumstances, to be negligent in failing to warn and reasonably protect the driver Leggett as he approached and attempted to negotiate the particular curve on the highway. We will not disturb the findings of the Board if they are supported by probative evidence. Commonwealth v. Mudd, Ky., 255 S.W.2d 989; Commonwealth, Department of Highways v. General & Excess Insurance Co., Ky., 355 S.W.2d 695; Commonwealth, Department of Highways v. Higdon, Ky., 383 S.W.2d 331.

The curve where the accident occurred is described as a 52° and a 117° curve. The curve turns 52° for each 100 feet. From beginning to end it turns 117°. William Hatcher, a highway engineer testifying for the Commonwealth, stated that a motor vehicle going around the curve would double back toward the direction from which it came. He stated, "It was a dangerous road, yes, but, all of the aspects were visible and could very well have been taken care of by an alert driver." Other witnesses described the curve as "sharp" and "steep." It was agreed that the maximum safe speed on the curve would be twenty miles per hour. Trooper Marion D. Campbell of the Kentucky State Police, after being qualified as an expert, testified that he had investigated the accident. Part of his testimony is as follows:

"Q 13. Did you observe the roadway to see whether or not there were any guard rails at this curve?

A. Yes sir, I did, there were no guard rails or curve signs to advise anyone of the condition of that place.

Q 14. Were there any speed signs anywhere at this curve?

A. No sir, at this curve there were none.

Q 15. Do you recall whether there was any curve sign at the bottom of the hill for traffic turning off of this road onto the bridge?

A. No sir, I don't remember, the only sign I remember would be the sign stating this was the Hemlock Lodge Road or some sign of that type, but I don't remember whether there were any curve signs or not.

Q 16. Was there any general warning signs saying this maximum speed on this road or maximum design speed of this road, 25 miles per hour?

A. No sir, there are no such signs there.

Q 17. Now Trooper, from your travel along the Commonwealth roads, I believe State Policemen do primarily travel the highways?

A. Yes.

Q 18. Is it a general practice in the Commonwealth of Kentucky, along the highways, to have signs advising of the approach of a dangerous curve or

curve with a recommended speed under the sign?

A. Yes sir, generally it is.

Q 19. Officer, from your examination of this curve, would you categorize it as a slight curve, a mild curve or sharp curve, or what type curve?

A. I would say in my opinion that it is a sharp curve.

Q 20. What, in your opinion, would be a safe speed along this curve?

A. I thought at the time, and my opinion still is the same, that the curve should have been marked 15 to 25 miles per hour, I would say more or less 20 if I had been putting the sign up myself, I would say 20.

Q 21. From your experience in accident and training, is it your opinion that there should have been a warning sign on this curve?

A. Yes sir, I think it should, I stated in my report at the time I felt there should have been a guard rail and signs, however, whether this would have prevented the boy from being killed or not will be unknown, but I feel like it would have deterred the accident to some extent."

Based on all the evidence, the Board of Claims had ample proof to find the appellant negligent in failing to erect signs, guardrails, or barriers such as posts on this particular highway at or near the curve where the accident occurred.

■ As concerns proximate cause, we do not believe it could be said that as a matter of law the limited knowledge Leggett had obtained of the condititon of the road, by virtue of his having traversed it once on his way up the hill, was such that he needed no further warning by signs or protection by guardrails.

Leggett admits that he was driving too fast to make the curve. He estimated his speed at 30 to 35 miles per hour. Other witnesses stated that he was traveling faster. The negligence of Leggett is admitted. The Board found that appellant and Leggett were jointly and concurrently negligent and that the negligence of both contributed to and brought about the fatal accident. This is the only reasonable interpretation that can be placed on the findings and award of the Board when considered in its entirety along with all the evidence.

■ The contribution levied against the appellant is $7,000. Had the appellee settled the death claim for $20,000, the Board could have assessed $10,000 against the appellant but no more, as $10,000 is the limit of liability permitted by statute. The argument that the contribution award against the appellant should have been $5,000 instead of $7,000 is without merit. Within the limitation of the statute creating the Board of Claims, it is the amount of contribution awarded that controls.

The judgment is affirmed.

MILLIKEN, C. J., and OSBORNE, PALMORE, REED, and STEINFELD, JJ., concur.