**COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, BUREAU OF HIGHWAYS, Appellant,**

v.

**Teresa Lynn ROOF, et al., Appellees.**

**Teresa Lynn ROOF, By and Through Her Next Friend and Natural Father, Billy ROOF, Cross–Appellant/Appellee,**

v.

**COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, DEPARTMENT OF HIGHWAYS and Board of Claims, Cross–Appellees/Appellants.**

**Nos. 93–SC–112–DG, 93–SC–698–DG.**

Supreme Court of Kentucky.

Jan. 18, 1996.

Dale M. Morris, Transportation Cabinet, Bureau of Highways, Elizabethtown, for Appellant/Cross–Appellee.

Kim F. Quick, Collier, Arnett, Quick & Coleman, Elizabethtown, Kenneth F. Smart, Leitchfield, for Appellee/Cross–Appellant.

## OPINION OF THE COURT

On June 6, 1987, appellee/cross-appellant Teresa Lynn Roof lost control of her vehicle while crossing a bridge in Grayson County, Kentucky. Although the speed limit on that particular roadway was fifty-five miles per hour, Roof had slowed to around twenty miles per hour at the time her tires left the road's shoulder. On the bridge, her car struck the retaining guardrail which gave way with little resistance, allowing Roof's car to fall ten feet into Sunfish Creek. As a result of the accident, Roof sustained personal injury damages in excess of $314,602.90.

Roof filed a claim with the Board of Claims in which she alleged that the Transportation Cabinet negligently constructed and maintained the guardrail and that its negligence was the cause of her injuries. She sought the maximum available recovery of $100,-000.00. The Transportation Cabinet answered Roof's claims by asserting that it was her negligence that caused the accident, and not the negligence of the Transportation Cabinet.[1] Nowhere did the Cabinet assert

---

1. The Board of Claims accurately summarized the Cabinet's position as follows:

    [I]t contends that it cannot be held liable for the damages to the plaintiff because the guardrail system in question was not defective; that alternatively, if the guardrail system was defective, the Cabinet of Highways had no knowledge of a defect or again, alternatively, if constructive knowledge of the defect is imputed, it had taken reasonable steps to warn the traveling public of the defective condition by posting a curve sign. Additionally, the Cabinet of Highways strongly argues that Ms. Roof negligently operated the automobile resulting in the accident and further, negligently failed to wear a seat belt causing her injuries, if not the increased severity of her injuries.

that it had no duty to construct or maintain a guardrail at Sunfish Creek.

After an evidentiary hearing, the Board of Claims found that the guardrail was of such a substandard nature both in design and maintenance that it permitted Roof's automobile to plunge into the creekbed resulting in her injuries. The Board determined that negligence of the Transportation Cabinet was the predominant cause.

On appeal the circuit court reversed the Board of Claims and held that the Transportation Cabinet had no duty to construct or maintain guardrails at the accident site, and as a result, Roof was solely at fault. The Court of Appeals affirmed in part, and reversed in part. It held that the question of legal duty had been waived by the Transportation Cabinet as it was first mentioned in the opinion of the circuit court. As such, the Court of Appeals reinstated the judgment of the Board of Claims, and also held that the sum of $10,000.00 paid to Roof as basic reparation benefits must be off-set against the $100,000.00 awarded by the Board of Claims, thus reducing her recovery to $90,000.00. We granted discretionary review to determine whether the Transportation Cabinet waived a right to rely on the absence of a legal duty by its failure to raise it, and whether basic reparation benefits paid to Roof were properly credited against the award of the Board of Claims.

■ Fundamentally, a basic element of actionable negligence is the breach of a legal duty. *See, e.g., Chesapeake & O. Ry. v. Carmichael*, 298 Ky. 769, 770, 184 S.W.2d 91, 92 (1944); *Transportation Cabinet v. Thurman*, Ky.App., 897 S.W.2d 597, 599 (1995). Without such a duty, there can be no recovery. However, the Transportation Cabinet virtually conceded that it had a duty and practiced this case exclusively on the question of which party was negligent, whether the Cabinet or Roof. It declined to assert that it had no duty until such proved to be dispositive in the Hardin Circuit Court. Until then Roof had been unaware of the necessity to litigate this issue. Only thereafter did

*Findings of Fact, Conclusions of Law and Order,*

the question of duty became significant to the Transportation Cabinet.

The form used by the Commonwealth in answering a claim in the Board of Claims provides five different bases upon which the state can dispute liability to a claimant, including one category broadly headed as "other." The Cabinet chose to assert only that it was the negligence of Roof, and not the Commonwealth, that caused the accident, stating that it was Roof's "failure to operate her vehicle in a safe manner, failure to operate her vehicle at a safe speed for the type of road being traveled, and failure to keep her vehicle under proper control." It appears to have been a conscious decision of the Cabinet not to contest the matter on the grounds it did not select. We reiterate, at no time during the administrative proceeding, either before the hearing officer or by means of motions to dismiss or memoranda in support of its case, did the Transportation Cabinet contend that it had no duty to erect and maintain the guardrail. The Cabinet candidly admitted this fact as follows:

> The Cabinet acknowledges that it did not specifically argue "duty," but hastens to add that its failure to do so does not prevent the Circuit Court from considering the legal conclusion as drawn by the Board in its *Findings of Fact, Conclusions of Law and Judgment.*

Brief for Appellant/Cross–Appellee at 7.

While we do not consider the issue of legal duty to be an affirmative defense which must be specifically pled or waived as a result of the failure to plead it, we cannot allow this issue to become dispositive of the case when it was utterly ignored by the Cabinet until the circuit court raised it over three and one-half years after the Cabinet had answered Roof's claim. The question of duty is fact intensive and must be presented during the fact finding process. While it may be broadly stated that the Commonwealth is under no legal obligation to erect guardrails along every mile of state highway, we can conceive of exceptions to the general rule. In *Commonwealth, Department of Highways v. Automobile Club Insurance Co.*, Ky., 467 S.W.2d 326 (1971), the Court held that:

Board of Claims, at 2.

[T]he public authority having control over a highway has a duty to keep it in a reasonably safe condition for travel, to provide proper safeguards, and to give adequate warning of dangerous conditions in the highway. This includes the duty to erect warning signs and to erect and maintain barriers or guardrails at dangerous places on the highway to enable motorists, exercising ordinary care and prudence, to avoid injury to themselves and others. The [Department of Highways] is under no duty to provide warning signs, guardrails, or barriers when an unusual or dangerous condition does not exist. Neither is it appellant's duty to erect guardrails or barriers of sufficient strength to withstand any degree of force. However, it is appellant's duty to furnish adequate protection for the general traveling public and users of the highway facilities.

*Id.* at 328. Without the benefit of adversarial production of evidence and argument, the factfinder would have been unable to answer the question of liability. In a case such as this, one in which a legal duty may or may not be determined to exist, reliable fact finding demands that any challenge to the existence of a legal duty be made in a timely manner. In the absence of evidence to the contrary, claimant's case was sufficiently persuasive of the existence and breach of a legal duty to support a decision rendered thereon. A factual determination at the circuit appellate level that the Transportation Cabinet was under no legal duty to maintain the guardrails in question amounted to a substitution of its judgment for that of the Board of Claims.

■ The Cabinet practiced this case on the basis that Roof was negligent. After the factfinder had determined that her injuries were caused by the inadequate guardrail, the Cabinet had no right to change course to say that it had no duty to install or maintain the guardrail. We have long held that "it is the accepted rule that a question of law which is not presented to or passed upon by the trial court cannot be raised [on appeal] for the first time." *Hutchings v. Louisville Trust Co.*, Ky., 276 S.W.2d 461, 466 (1955); *cf. Mitchell v. Hadl*, Ky., 816 S.W.2d 183, 185 (1991) (addressing the limited circumstances under which the Supreme Court will consider issues not raised below). Presented with the facts in issue, the Board of Claims determined that the Transportation Cabinet breached a legal duty owed to Roof, and that the breach was a substantial factor in causing her injuries. Because lack of duty was not raised by the Transportation Cabinet, we deem it waived and affirm the Court of Appeals on this issue.

■ A second question, raised by Roof in her cross-appeal, is whether the Board of Claims award of $100,000.00 should have been reduced by the amount of basic reparation benefits received by Roof from her insurer. As a first matter, we reiterate that the Commonwealth is under no obligation to make payment to injured parties because of the protections provided by the doctrine of sovereign immunity. KY. CONST. § 231. It is the province of the General Assembly to waive immunity, if at all, and only to the extent it sees fit. Currently, the maximum award available in the Board of Claims is $100,000.00, regardless of actual loss.

Under KRS 44.070(1), the General Assembly provided that:

[A]ny damage claim awarded shall be reduced by the amount of payments received or right to receive payment from workers' compensation insurance, social security programs, unemployment insurance programs, medical, disability or life insurance programs or other federal or state or private program designed to supplement income or pay claimant's expenses or damages incurred.

The clear language of the statute, "payments received … from … [a] private program designed to supplement income or pay claimant's expenses or damages incurred," encompasses basic reparation benefits. As such, we can reach no conclusion other than that the General Assembly has seen fit to reduce damages awarded by the Board of Claims by sums received from private insurance.

In *Cooke v. Board of Claims*, Ky.App., 743 S.W.2d 32 (1987), the Court of Appeals determined that a damage award of $19,255.10 was

subject to reduction by $10,000.00, the amount received from benefits paid by a private insurer, the same reduction approved by the Board of Claims, the Hardin Circuit Court, and the Court of Appeals in this case. Roof claims that *Cooke* may be distinguished in that the injuries sustained there were fully compensated. It is alleged that as Roof suffered in excess of $314,602.90 in economic losses, there is no possibility she would be unjustly enriched. Thus, she reasons, any reduction in the $100,000 award is unnecessary. While such an argument appeals to our sense of equity, we must nonetheless affirm the Court of Appeals. The intent of the General Assembly is evident from the language of the statutes it enacted, and it is within its prerogative to impose such limitations and reductions as it sees fit. *See* KY. CONST. § 231; *cf. Central Ky. Drying Co. v. Commonwealth,* Ky., 858 S.W.2d 165, 168 (1995) (holding that KRS 44.070(1) does not require set-off for payments received from a settling joint tortfeasor). The question presented is exclusively one of statutory construction and the language is clear. We are bound by the chosen words of the General Assembly.

We are also urged to determine that "award" means the Board of Claims' finding as to damages, here in excess of $314,602.90. Thus, if the $10,000.00 no-fault benefit is subtracted from the amount found, Roof's award of $100,000.00 would suffer no reduction. As stated hereinabove, we are constrained by the statutory language and conclude that only damages awarded by the Board of Claims were within the contemplation of the General Assembly without regard to total damages found. The reduction must be made from the award, not from the finding.

The decision of the Court of Appeals is affirmed, and this cause is remanded to the Board of Claims for further proceedings consistent with this opinion as may be required.

STEPHENS, C.J., and GRAVES, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

KING, J., dissents by separate opinion in which STUMBO, J., joins.

KING, Justice, dissenting.

Respectfully, I dissent from that portion of the majority opinion which holds that Roof's Board of Claims award of $100,000.00 must be reduced by the amount of basic reparation benefits received by Roof from her insurer. These collateral source benefits should be applied against the total damages sustained and not against the statutory limitation of liability.

KRS 44.070(1) provides in pertinent part:

A Board of Claims ... is created and vested with full power ... to compensate persons for damages sustained to either person or property ... [A]ny damage claim awarded shall be reduced by the amount of payments received ... from [a] private program designed to supplement income or pay claimant's expenses or damages incurred.

The clear intent of KRS 44.070(1) is to preclude an injured party from receiving a double recovery thereby being unjustly enriched. Thus, the statute requires a reduction in the amount of the award only when certain itemized collateral sources duplicate payment *for* the damages awarded. Interpreting KRS 44.070(1) to require a reduction in an award when there is no double recovery, leads to an unjust and unduly harsh result.

*Cooke v. Board of Claims,* Ky.App., 743 S.W.2d 32 (1987), is not applicable to the situation presented here. In *Cooke,* the claimant sustained *total* damages of $19,255.10. Because KRS 304.39–060(2)(a) abolishes tort liability for damages to the extent basic reparation benefits are payable, the Court of Appeals reduced the award by $10,000.00 which represented the no-fault insurance benefits the claimant received. By this ruling the Court prevented double recovery and unjust enrichment. In the present case, the Board of Claims determined Ms. Roof's damages were in excess of $314,000.00. Here there is no possibility of double recovery for any item of damage.

In *Truman v. Kentucky Board of Claims,* Ky.App., 726 S.W.2d 312 (1987), the plaintiff's decedent and a state employee were

each held to be fifty percent at fault for the decedent's death. Damages were stipulated as being $100,000.00. At the time, the statutory limit on liability was $50,000.00. The issue before the Court of Appeals was whether the Commonwealth was required to pay $25,000.00, representing fifty percent of the statutory limit, or $50,000.00, representing fifty percent of the stipulated damages. The Court of Appeals held that the comparative negligence doctrine applied to the *damages* sustained rather than to the statutory limitation on recovery. As a result, the Commonwealth was liable for the full statutory limit of $50,000.00 even though it was only fifty percent at fault for causing the injuries.

A statute should not be construed to work inequality and hardship when such a construction is not mandatorily required by the language employed. *Martin v. Gage*, 281 Ky. 95, 134 S.W.2d 966 (1939); *City of Covington v. Sohio Petroleum Co.*, Ky., 279 S.W.2d 746 (1955). The inequities of the procedure required by the majority's opinion are apparent when viewed in the context of common experience. Consider the claims of those who sustain damages in the form of medical expenses, lost wages and future impairment of income in the collective sum of $200,000.00. If fault is equally allocated against the Commonwealth and a second defendant, the Commonwealth must pay $100,000.00 even though only fifty percent at fault. Where the claimant and Commonwealth are both fifty percent at fault, again the Commonwealth must pay $100,000.00. But when a citizen has the foresight to purchase health care and wage continuation benefits paying her $100,000.00, even though the Commonwealth is exclusively at fault for the claimant's injuries, under today's decision, the Commonwealth escapes liability.

In a fair and just society fault should be followed by liability. When responsible citizens purchase protection against anticipated losses they do so for their protection and not to bestow upon the Commonwealth a windfall.

The language in KRS 44.070(1) requiring reduction for collateral source payments applies to the total damages sustained by the claimant as determined by the Board of Claims and not the $100,000.00 statutory limitation on liability provided in KRS 44.070(5). Roof's total damages, determined by the Board to exceed $314,000.00, should be reduced by her basic reparation payments as set out in KRS 44.070(1), and her award should be the $100,000.00 statutory maximum as set out in KRS 44.070(5).

STUMBO, J., joins.