**Debra GILBERT, Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

No. 2007–SC–000078–DG.

Supreme Court of Kentucky.

Jan. 22, 2009.

Charles E. Theiler, II, Sitlinger, McGlincy, Theiler & Karem, Louisville, KY, Counsel for Appellant.

Gregory L. Smith, Smith & Hoskins, Louisville, KY, Counsel for Appellee, Nationwide Mutual Insurance Company.

Opinion of the Court by Justice ABRAMSON.

We accepted discretionary review in this auto insurance case to consider whether an insured's failure to bring suit against the tortfeasor within the limitations period violates a contract provision whereby the insured undertakes to "do nothing to prejudice" the insurance company's right to subrogation. The Court of Appeals held that failure to bring timely suit violated the contract, and thus that insurance coverage was properly denied. We disagree and reverse.

## RELEVANT FACTS

On May 22, 2000, a tractor-trailer owned by Prime, Inc., and operated by Michael Baldanza, went out of control as it rounded a curve on Interstate 65 in Louisville. The fully loaded rig tipped over and fell on a 1994 Nissan Altima owned by Debra Gilbert and operated at the time by Gilbert's daughter, Nicole Schindler. Fortunately, and amazingly, Schindler escaped with relatively minor injuries, but Gilbert's vehicle was crushed and totaled. Gilbert promptly gave notice of the accident to her auto insurer, Nationwide Mutual Insurance Company. Gilbert and Nationwide were also in contact with Prime's insurer, Reliance Insurance Company, and after a preliminary investigation, Reliance's agent indicated to Gilbert and Nationwide that Reliance accepted Prime's liability for the accident and so would handle both Schindler's bodily injury claim and Gilbert's collision claim. Gilbert therefore did not initiate a collision claim under her Nationwide policy, and Nationwide apparently closed Gilbert's collision file.

Notwithstanding Reliance's assurances, Schindler was eventually obliged to bring suit against Prime for her personal injury damages. Gilbert did not join her property damage claim to her daughter's suit, but assumed that her loss would be paid once her daughter's claim had been resolved. Schindler's personal injury claim was not settled until December 2003, more than two years after the May 2000 accident. When Gilbert then demanded reimbursement for the destruction of her vehicle, Prime asserted the statute of limitations and repudiated her claim. Gilbert was then permitted to intervene in her daughter's suit against Prime and also made a collision damage claim under her own policy with Nationwide. Nationwide, too, refused to pay, whereupon Gilbert joined it as a party to her suit against Prime.

In separate orders entered July 26, 2005, the Jefferson Circuit Court granted summary judgment to both Prime and Nationwide. The trial court ruled that Gilbert's claim against Prime was barred by the two-year statute of limitations applicable to tort actions arising from the use of a motor vehicle. KRS 304.39–230. Gilbert's claim against Nationwide was foreclosed, the court ruled, by a policy provision requiring Gilbert "to do nothing to prejudice" Nationwide's subrogation rights. Gilbert had prejudiced those rights, the court concluded, by allowing the lapse of her (and hence her subrogee's) property damage claim against Prime.

Gilbert sought review in the Court of Appeals, which affirmed both rulings. In an Opinion rendered December 22, 2006, the Court agreed with the trial court that Gilbert's suit was untimely and that her failure to sue Prime within the limitations period prejudiced Nationwide's subrogation right, a contract violation that excused Nationwide from providing collision benefits. Having accepted Gilbert's motion for discretionary review to consider this second issue, which potentially affects a large number of Kentucky insurance contracts, we now reverse.

## ANALYSIS

■ As Nationwide notes, the collision coverage provided in Gilbert's policy—"We will pay for loss to your auto caused by collision or upset."—is qualified by the following subrogation clause:

We have the right of subrogation under the ... physical damage ... coverages in this policy. This means that after paying a loss to you or others under this policy, we will have the insured's right to sue for or otherwise recover such loss from anyone else who may be liable. Also, we may require reimbursement

from the insured out of any settlement or judgment that duplicates our payments. These provisions will be applied in accordance with state law. Any insured will sign such papers, and do whatever else is necessary, to transfer these rights to us, and will do nothing to prejudice them.

Nationwide contends, and the courts below agreed, that by allowing her property damage claim against the tortfeasor to lapse, Gilbert effectively destroyed Nationwide's subrogation right and thus breached this clause of her policy.

In support of this conclusion, Nationwide relies on *Remedial System of Loaning v. New Hampshire Fire Insurance Company*, 227 Ky. 652, 13 S.W.2d 1005 (1929), in which an insured extinguished his insurer's subrogation right by settling with the tortfeasor and releasing it from all liability. Upholding the dismissal of the insured's subsequent claim against the insurer, the Court explained that,

if the assured, by voluntary action, unreservedly releases a wrongdoer for damage done to the insured property, he thereby discharges the insurance company to the extent its right of subrogation may have been defeated by such action of the assured.

13 S.W.2d at 1006.

 Where the insurer has been provided with notice of the insured's loss, however, as Nationwide was here, other courts have distinguished cases such as *Remedial System,* in which the insured's affirmative act has prejudiced the subrogation right, from cases, such as this one, where the insured "failed" to bring suit. *M. DeMatteo Construction Company v. Century Indemnity Company,* 182 F.Supp.2d 146 (D.Mass.2001); *Uptegraft v. Home Insurance Company,* 662 P.2d 681 (Okla.1983); *Jones v. Integral Insurance Company,* 631 So.2d 1132 (Fla.Ct.App.

1994). As these courts have explained, subrogation clauses such as Nationwide's (which, of course, must be construed narrowly against the insurance company drafter, *Wine v. Globe American Casualty Company,* 917 S.W.2d 558 (Ky.1996)), do not by themselves impose on the insured an affirmative duty to bring suit against the alleged tortfeasor. They require the insured "do nothing to prejudice" the insurer's subrogation rights, but they do not require her to initiate suit on the insurer's behalf. As the *M. DeMatteo Construction Company* court stated,

If the Insurers had wanted to create an affirmative duty for the insured to pursue any claim against a third-party tortfeasor before the running of the statute of limitations, then it would have been simple for the Insurers to write such an obligation into the contract.

182 F.Supp.2d at 157.

 In fact, absent an affirmative, prejudicial act by the insured, timely notice of the loss enables the insurer to take whatever steps it deems necessary to protect its potential subrogation right. For example, as noted by the federal district court in *M. DeMatteo Construction Company,*

[h]aving received such timely notice, the Insurers had at least three options as to how to proceed to protect their rights of subrogation: they could have provided full coverage under the Policy and then independently pursued a subrogation claim against [the tortfeasor]; … they could have required [the insured] to file a tort claim against [the tortfeasor]; … or they could have directed [the insured] to negotiate with [the tortfeasor] to extend the statute of limitations for filing an action.

182 F.Supp.2d at 158. We agree with these courts that the insurer, almost always more knowledgeable about claims

settlement practices than its insured, should bear the principal burden of protecting its subrogation rights and that those rights should not operate to defeat the insured's reasonable coverage expectations. This approach is consistent with the approach to settlements we adopted in *Coots v. Allstate Insurance Company,* 853 S.W.2d 895 (Ky.1993). Under that approach, since codified at KRS 304.39–320, the insurer's potential subrogation right is not allowed to interfere with the insured's interest in a prompt settlement with the tortfeasor; the subrogation right is protected by the requirement that the insurer be given notice of the proposed settlement which the insured has agreed to accept and an opportunity to intervene if it so desires.

Here Nationwide had prompt notice of Gilbert's loss and her potential claim, but it neither opted to intervene in the apparent agreement between Gilbert and Reliance nor took any other steps to protect its subrogation rights. In these circumstances, by providing Nationwide with notice, Gilbert satisfied her contractual duty not to interfere with her insurer's ability to protect itself. She thus preserved her contractual right to collision coverage. Her mere failure subsequently to bring suit against Prime within the limitations period neither violated any contractual duty nor defeated that coverage. The courts below erred by ruling otherwise.

As a final note, we are aware that in *Landgren v. Aetna Life & Casualty Company,* 366 Mass. 725, 322 N.E.2d 417 (1975), a case similar to this one, the Supreme Court of Massachusetts reached a contrary result. In *Landgren,* as here, an insured notified her collision insurer of a loss but made no claim under her policy because the tortfeasor's insurer had agreed to provide coverage. That agreement apparently fell through, however,

and after the limitations period had expired the insured brought a claim against her insurer. In upholding a dismissal of the insured's claim, the Court opined that the insured's initial representation to the collision insurer that she was not filing a claim because of the agreement with the tortfeasor's insurer,

> amounted to affirmative action which, coupled with the [insured's] delay in presenting her claim, prejudiced Aetna's right of subrogation and, therefore, precluded the [insured] from recovery under her policy.

322 N.E.2d at 418. Under our law, however, which has emphasized that the insurer's right to subrogation must not be allowed to subordinate the insured's right to coverage, we decline to characterize Gilbert's notice to Nationwide that Reliance would cover her claim as an affirmative act prejudicial to Nationwide's subrogation right. On the contrary, the notice apprised Nationwide of Gilbert's potential claim and so afforded Nationwide an adequate opportunity to take steps to preserve its rights if it so desired. As noted above, this result comports with our prior cases placing on the potential subrogee the primary burden of protecting itself.

### CONCLUSION

In sum, the subrogation clause in Gilbert's insurance contract required her to "do nothing to prejudice" Nationwide's subrogation right, but it did not relieve Nationwide of its duty to protect itself, nor did it require Gilbert to act affirmatively on Nationwide's behalf. In this case, Gilbert's prompt notice of her loss satisfied her contractual duty. By its terms the subrogation clause did not require Gilbert to bring suit against the tortfeasor, and her mere failure to do so within the limitations period cannot, therefore, be deemed a contract violation barring her recovery of collision benefits. Accordingly, we reverse

that portion of the December 22, 2006 Opinion of the Court of Appeals upholding summary judgment in favor of Nationwide and remand to the Jefferson Circuit Court for additional proceedings consistent with this Opinion.

All sitting. All concur.